**IN THE UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**Orlando Division**

**Case No.**

ENFIN Corp., a Delaware Corporation,

Plaintiff,

v.

SOLAR CANCELLATION RESOURCE CENTER LLC, a Wyoming limited liability company; FONBUENA LAW FIRM, CHTD., d/b/a CONSUMER ADVOCACY LAW GROUP, a Nevada law firm, and RICHARD FONBUENA, an individual,

Defendants.

_________________________________/

# COMPLAINT

Plaintiff EnFin Corp., ("EnFin"), by and through its attorneys, files this Complaint against Solar Cancellation Resource Center LLC ("SCRC"), Fonbuena Law Firm, Chtd., d/b/a Consumer Advocacy Law Group ("CALG"), and Richard Fonbuena ("Fonbuena") (collectively, "Defendants"), as follows:

## I. INTRODUCTION

1. EnFin Corp. is a leading servicer of solar financing solutions provided to homeowners for residential solar panel systems. EnFin has enabled thousands of

homeowners around the country to obtain reliable clean energy in the form of residential solar panels systems installed on homeowners' properties.

2. Defendants run an unlawful scheme targeting EnFin and its customers through the deceptive marketing and sale of an illusory promise: that they can cancel customers' agreements with EnFin. Defendants promise an impossible "100% guaranteed" exit from solar agreements, induce customers to breach their contracts, use the non-payment to justify collection of upfront fees, send boilerplate demand letters, and seek to extract large payments from EnFin without providing meaningful legal services.

3. Florida is crucial to EnFin's business. Florida is a large and growing solar market and EnFin's reputation in Florida is critical. Florida is EnFin's third largest customer base and contains the third largest number of customers who have been lured into Defendants' illegal scheme.

4. Defendant CALG's owner and managing partner, Richard Fonbuena, is not new to this scheme. Before bringing it to the solar industry, Fonbuena and his firm ran the same scheme in the timeshare industry. He changed his law firm's d/b/a from "Timeshare Defense Attorneys" to "Consumer Advocacy Law Group" after agreeing in two prior cases to injunctions shutting down his timeshare-defense scheme. The script was identical: a nonlawyer marketing arm generated leads with


LEÓN COSGROVE JIMÉNEZ, LLP
255 ALHAMBRA CIR., 8TH FLOOR | MIAMI, FL 33134 | T 305.740.1975 | WWW.LEONCOSGROVE.COM

promises of a "legal exit"; large upfront fees were collected; boilerplate demand letters were sent; and customers were induced to breach their contracts.

5. In both prior cases, *Wyndham Vacation Resorts, Inc. v. Timeshare Exit Hotline*, Case No. 6:22-cv-00674 (M.D. Fla), and *Capital Resorts Group, LLC v. Fonbuena Law Firm, CHTD*, No. 4:24-cv-03860 (D.S.C), Fonbuena and his law firm, Fonbuena Law Firm, Chtd., ("Fonbuena Law Firm") settled the case and Fonbuena Law Firm agreed to stop their timeshare exit scheme. Fonbuena then decided to target a new industry—solar financing entities like EnFin.

6. Notably, even though Fonbuena and Fonbuena Law Firm agreed to stop their timeshare exit scheme, the Better Business profile for Fonbuena Law Firm still receives complaints about its timeshare exit scheme, with at least one submission occurring as recently as November of 2025.

7. Defendant SCRC, the marketing engine of this scheme, is not a law firm and is not licensed to practice law in Florida. Yet it advertises—on its website and on social media channels targeting Florida homeowners—services that create the impression it offers legal services. SCRC promises "full legal support from licensed attorneys" and "attorney-led contract review," tells homeowners it is "proud to partner with Consumer Advocacy Law Group," and expressly promises legal work, citing the Truth in Lending Act, Federal Trade Commission Act, and Fair Debt Collection Practices Act.

8. SCRC also backs its sales pitch with deceptive guarantees that violate the rules of professional conduct: that it "only accepts cases where [it] know[s] the outcome will be favorable," offers a "100% satisfaction guarantee," and delivers "100% favorable outcome[s]."

9. SCRC lists sixty-two “Solar Exit Consultant” employees on its website. Defendants seek to profit from volume, not legitimate services or outcomes.

10. CALG lends SCRC's sales pitch the appearance of genuine legal representation. In reality, client communications are filtered through SCRC, and SCRC's non-lawyer employees manage the cases. CALG simply sends boilerplate demand letters to solar providers—letters designed not to achieve legal results but to cut off communication between solar providers and their customers and generate a windfall for Defendants. Despite sending approximately 330 such letters to EnFin within a relatively short period of time, most of which are boilerplate allegations lacking any specificity, CALG has never filed a lawsuit or initiated arbitration on behalf of its purported clients.

11. EnFin's relationships with its customers are governed by binding contracts that set forth customers' payment obligations and the parties' rights. EnFin's ability to communicate with and address customer concerns and work through solutions is central to both its business and its reputation. When CALG sends its


LEÓN COSGROVE JIMÉNEZ, LLP
255 ALHAMBRA CIR., 8TH FLOOR | MIAMI, FL 33134 | T 305.740.1975 | WWW.LEONCOSGROVE.COM

letters directing EnFin to cease all direct contact with the customer, no one benefits except Defendants.

12. Defendants' scheme depends on persuading customers to break their binding, legal agreements with EnFin. Without induced default, there is nothing for Defendants to sell, and no leverage to extract. Defendants' business model and product is inducing the breach of existing contracts at scale, monetized with upfront fees paid by the customer.

13. SCRC, in collaboration with Fonbuena, has published a book about exiting/breaching solar contracts titled “Trapped in Solar.” The cover of the book states that “the contract is the cage,” and encourages customers to “break the chains.” Defendants’ business model is to induce the breach of existing contracts in exchange for fees.

14. EnFin customers, including Florida customers, solicited through the scheme have stopped paying their monthly payments and EnFin is unable to communicate with them following CALG's demands that all communication with those customers be done through CALG.

15. Customer defaults due to non-payment have occurred in Florida on the payment due date immediately following EnFin’s receipt of a boilerplate letter from CALG.


LEÓN COSGROVE JIMÉNEZ, LLP
255 ALHAMBRA CIR., 8TH FLOOR | MIAMI, FL 33134 | T 305.740.1975 | WWW.LEONCOSGROVE.COM

16. EnFin brings this action to stop Defendants' false advertising, deceptive and unlawful legal-services marketing, unauthorized practice of law, and intentional interference with EnFin's customer relationships.

17. EnFin asserts the following claims against Defendants: (1) false advertising under the Lanham Act, (2) contributory false advertising under the Lanham Act, (3) violation of Florida's Deceptive and Unfair Trade Practices Act ("FDUTPA"), (4) tortious interference with contract, and (5) civil conspiracy. It seeks injunctive relief, disgorgement of profits, actual damages, punitive damages, attorneys' fees, and all other appropriate relief.

## II. PARTIES

18. Plaintiff EnFin is a Delaware company with its principal place of business located at 300 Spectrum Center Dr., Suite 500, Irvine, California, 92618.

19. Defendant SCRC is a Wyoming limited liability company. SCRC is also registered as a foreign limited liability company in Nevada with the address 3320 N. Buffalo Dr., Suite 208A, Las Vegas, Nevada 89129.

20. Defendant CALG, like SCRC (as of July 30, 2026), purports to have an office at 3320 N. Buffalo Dr., Suite 208, Las Vegas, Nevada 89129. CALG is the d/b/a for and is owned by Fonbuena Law Firm, Chtd., a Nevada Domestic Professional LLC with its principal place of business in Nevada.

21. CALG has clients that reside in this district and other districts within the state of Florida and have Customer Solar Agreements with EnFin, and CALG purports to provide legal services to those clients in the state of Florida.

22. Defendant Richard Fonbuena is an individual and a resident of the state of Nevada and the manager of Fonbuena Law Firm, Chtd. Upon information and belief, Fonbuena is the sole owner of Fonbuena Law Firm, Chtd. d/b/a CALG.

## III. JURISDICTION AND VENUE

21. This Court has subject matter jurisdiction over the claims arising under the Lanham Act pursuant to 28 U.S.C. §§ 1331 and 1338. This Court has supplemental jurisdiction over the state law claims pursuant to 28 U.S.C. § 1367, as those claims are so related to the Lanham Act claims that they form part of the same case or controversy.

22. Plaintiff believes this Court has subject matter jurisdiction under 28 U.S.C. § 1332 but requires jurisdictional discovery to confirm the residence of each member of SCRC. *See Purchasing Power, LLC v. Bluestem Brands, Inc.*, 851 F.3d 1218, 1221 (11th Cir. 2017) (discussing jurisdictional discovery to establish diversity jurisdiction). SCRC is a Wyoming LLC, which authorizes anonymous members, and the member(s) residences are not otherwise publicly available. The monetary amount in controversy exceeds $75,000, exclusive of attorneys' fees and


LEÓN COSGROVE JIMÉNEZ, LLP
255 ALHAMBRA CIR., 8TH FLOOR | MIAMI, FL 33134 | T 305.740.1975 | WWW.LEONCOSGROVE.COM

costs, and the value of the injunctive relief sought exceeds $75,000 exclusive of attorneys' fees and costs.

23. This Court has personal jurisdiction over Defendants pursuant to Fla. Stat. § 48.193(1)(a)(2), because by [c]omitting tortious acts within this state," Defendants submitted themselves "to the jurisdiction of the courts of this state for any cause of action arising from [such act(s)]." Defendants are also subject to this Court's jurisdiction as they are operating, conducting, engaging in, or carrying on a business or business venture in this state. To the extent injury to persons in this state arises out of an act or omission by Defendants outside of this state, this Court has jurisdiction over Defendants because they engaged in solicitation of service activities within Florida.

24. EnFin's claims arise out of Defendants' contacts with and purposeful availment of Florida—including but not limited to SCRC's misleading advertising on its website and social media. For example, SCRC's false and misleading advertisements were knowingly directed at and accessed by Florida residents, pertained to EnFin's relationships with Florida customers, and harmed EnFin's business relationships in Florida.

25. SCRC maintains Florida-specific advertising. It is one of the five states that SCRC has a specific page on its website for—solarcancellationrc.com/florida/—that advertises "Florida Solar Contract Cancellation."

26. SCRC and Fonbuena have published a book on solar contract cancellation that contains a chapter dedicated to Florida – one of only four states with a dedicated chapter in the book. The book states that “Florida is one of the fastest growing residential solar markets in the country.”

27. In connection with their scheme, Defendants directed communications into this state to profit from those communications.

28. Upon information and belief, to the extent EnFin’s Florida customers signed agreements with Defendants in connection with the scheme, those agreements were executed in Florida. Defendants have also tortiously interfered with the contracts of EnFin customers residing in Florida. And CALG, working with SCRC, has sent demand letters to EnFin on behalf of those Florida customers.

29. This Court also has personal jurisdiction over Defendants pursuant to Fla. Stat. § 48.193(2) because, as described herein, Defendants are "engaged in substantial and not isolated activity within [Florida]," and EnFin's claims arise out of that substantial, not isolated, activity.

30. Venue in the Middle District of Florida is appropriate under 28 U.S.C. § 1391(b) because it is the district in which a substantial part of the actions giving rise to the claims occurred. Florida makes up the third largest group of EnFin customers who have become "clients" of Defendants. And the largest number of those “clients” reside in this District. SCRC has and continues to target individuals

in this District using its false and misleading advertisements. Specifically, SCRC has four Florida city specific pages on its website, and of those four cities, three of them are in this District—Orlando, Tampa, and Jacksonville.[1] Venue in the Orlando Division is appropriate and will be most convenient for advancing the action because EnFin customers in this Division have been implicated by Defendants' scheme. Enfin customers who have fallen victim to Defendants' contract cancellation business model will be necessary witnesses in this action, and thus venue where those witnesses will be available and subject to subpoenas is necessary.

## IV. FACTUAL ALLEGATIONS

### *A. EnFin Is an Industry-Leading Residential Solar Provider.*

30. EnFin is a leading servicer of solar financing solutions provided to homeowners for residential solar panel systems. EnFin does not sell solar panels or perform installation services. Its mission is to enable homeowners to take control of their home energy costs with affordable financing.

31. Currently, Florida contains EnFin's third largest residential solar system portfolio and is one of its largest growing markets. EnFin's ongoing relationship with its customers is critical to EnFin's business and reputation.

32. Homeowners enter into a binding, written solar agreement with EnFin, or a lender via EnFin's platform (collectively, the "Customer Solar Agreement").

---

[1] *See* e.g. https://solarcancellationrc.com/solar-contract-cancellation-orlando/, last visited August 19, 2026

The Customer Solar Agreement governs the customer's payment obligations and all other material terms of the customer's relationship with EnFin. The Customer Solar Agreements constitute valid, enforceable contracts between EnFin and each of its customers.

33. EnFin services those Customer Solar Agreements by communicating with customers about payments, account status, disputes, hardship options, and solar-project issues. Direct customer communication is critical to EnFin's ability to mitigate delinquencies and help customers, and Defendants' scheme is specifically designed to sever that communication channel.

***B. Defendants' Business Model.***

34. SCRC is not a law firm. SCRC does not employ licensed attorneys. Instead, it is the marketer of a sham service. SCRC markets a failsafe “legal” exit from solar contracts. It calls itself "America's leading experts in helping homeowners exit solar contracts," and it offers "full legal support from licensed attorneys," "attorney-led contract review," and "free legal" or "case" reviews for solar cancellation. SCRC also promises success by, for example, advertising that it "only accepts cases where [it] know[s] the outcome will be favorable," has a "100% satisfaction guarantee," and provides "100% favorable outcome[s]."

35. SCRC collects fees from consumers who believe they are receiving legal representation; controls all client communications and directs the purported

representation; and thereby harms EnFin when customers cease payments in reliance on SCRC's unauthorized legal advice.

36. The Florida Supreme Court has held that closely analogous conduct—advertising and selling the legal services of lawyers to the public through a non-lawyer entity—constitutes the unauthorized practice of law. *Fla. Bar v. TIKD Servs. LLC*, 326 So. 3d 1073, 1080 (Fla. 2021) (reaffirming "the principle that only attorneys licensed to practice law in Florida are authorized to act like a law firm by advertising and selling the legal services of lawyers to the public," reasoning that because defendant had "no means of producing income except through the provision of legal services," it was "in the business of selling legal services to the public.").

37. As with *Fla. Bar v. TIKD Servs. LLC*, SCRC advertises and sells purported legal services to the public. SCRC has no means of producing income other than the sale of legal services. SCRC is engaged in the unauthorized practice of law.

38. CALG and Fonbuena are aware of SCRC's marketing of legal services, and customers have ceased making payments in reliance on SCRC's and CALG's unauthorized legal advice and the false assurance of legal representation.

39. Fonbuena is not licensed to practice law in Florida. Fonbuena and other attorneys at CALG who are not licensed to practice law in Florida send demand

letters on behalf of their purported “clients” who reside in Florida, and cite to Florida law.

40. The Florida Supreme Court has held that “corresponding with opposing parties or the attorneys of opposing parties as the representative of a customer in a legal matter,” is the practice of law. *The Fla. Bar v. We The People Forms And Serv. Ctr. of Sarasota, Inc.*, 883 So. 2d 1280, 1282 (Fla. 2004).

41. SCRC markets its services to consumers s across the United States via promotional materials, including specific advertisements directed at consumers in Florida, that are designed to induce solar customers to purchase SCRC's services on the belief that they are obtaining legitimate legal representation with guaranteed, favorable results.

42. Examples of SCRC’s advertisements are provided below:

a. The home page of SCRC's website advertises "[f]ull legal support from licensed attorneys" that can "help you break free—legally and permanently":[2]

[2] *See* https://solarcancellationrc.com/home-one-page-landing-google/, last visited on August 5, 2026.




b. SCRC holds itself out as "[b]acked by licensed attorneys and certified in contract law," and it guarantees a “100% FAVORABLE OUTCOME" next to the purported A+ rating by BBB:[3]

[3] *See* Fn. 1, *supra*.




c. SCRC advertises "Solar Contract Cancellation – Powered by Legal Experts," and provides 5 steps to "solar freedom." The fifth advertised step is "Permanent cancellation and termination of your solar contract":[4]



Freedom

---

[4] *See* Fn 1, *supra.*

Permanent cancellation
and termination of your
solar contract

d. SCRC solicits legal clients on behalf of CALG:[5]




e. SCRC's FAQ's suggest customers will be free from any financial obligations related to their solar system, may end up with a free solar system, and that SCRC only takes cases it knows it will win:

> "After our partner attorneys have legally and permanently cancelled your solar system contract, you will no longer be responsible for any related financial obligations, including leased and purchase financed solar systems."
>
> "In cases where the solar system is not removed and left on your home you may wind up with a free solar system. In either case removal of the solar system can be negotiated during your cancellation process."
>
> "Solar Cancellation Resource Cent (SCRC) only accepts cases where they know the outcome will be favorable."[6]

43. SCRC's "100% satisfaction guarantee," "100% favorable outcome," and similar advertisements are deceptive, because they provide the false impression

---

[5] *See* Fn 1, *supra.*

[6] *See* https://solarcancellationrc.com/faq/, last visited on August 5, 2026.

that SCRC can guarantee customers a legal, lawful, and risk-free exit from their solar contracts. SCRC does not and cannot fulfill that promise. And even if SCRC was qualified to provide legal services, or is speaking on behalf of CALG, legal professionals are prohibited from making guarantees regarding the results of their representations. Florida Rules of Professional Conduct prohibit advertisements that contain "statements or information a prospective client can reasonably interpret as a prediction or guarantee of success or specific results," because they are deceptive and inherently misleading. Fla. Bar Reg. R. 4-7.13(b)(1).

44. Contrary to these advertisements, Defendants have no means to guarantee lawful termination of binding contracts between EnFin and its customers. Defendants are not parties to the contracts and have no privilege to interfere with the contracts for their own gain.

45. SCRC attempts to manufacture credibility by falsely featuring on their webpage the statement "OUR BUSINESS FEATURED ON," followed by the statement "MAJOR MEDIA FIGHTING SOLAR FRAUD," and then logos of major media organizations:[7]

[7] *See* https://solarcancellationrc.com/home-one-page-landing/, last visited on August 5, 2026.




46. SCRC's "OUR BUSINESS FEATURED ON" representation is false and misleading. Those statements, particularly when paired with the logos of major media organizations, represent to viewers that SCRC or its partner CALG, have been independently featured, covered, interviewed, profiled, endorsed, or otherwise validated by those outlets. That is not true.

47. A diligent search of publicly available materials did not reveal a single article, broadcast segment, interview, video clip, publisher-created profile, or other editorial coverage by any of the listed media organizations featuring SCRC, CALG, or their solar-cancellation services.

48. These media-coverage representations are material. Defendants use them to create the false appearance that established, reputable, national media organizations have vetted or otherwise validated Defendants' businesses.

49. SCRC markets directly to Florida customers by, for example, maintaining at least two websites devoted to “Florida Solar Contract Cancellation”: https://solarcancellationflorida.com/ and https://solarcancellationrc.com/florida/, and maintaining a Facebook page for "Florida homeowners."

50. Once SCRC lures in a potential customer using its deceptive advertisements, SCRC begins by conducting a free "legal" or "case" review. In reality, the review primarily functions as a sales screening: SCRC decides whether the homeowner is a profitable lead and then extracts an upfront or fixed fee from the homeowner that totals thousands of dollars.

51. Public consumer reports about SCRC describe fees of thousands of dollars, alongside false promises of favorable legal outcomes that never materialized.

52. This up-front fee structure gives SCRC an immediate financial incentive to sign up as many customers as possible, regardless of whether individualized legal relief is available.

53. As illustrated by a March 15, 2026 client complaint on SCRC's Better Business Bureau profile, in their advertising, and after "retaining" clients, SCRC advises the clients to stop making payments on their solar agreements, based on the false premise that SCRC's "legal team" will resolve the matter, and that the cessation

of payments is a necessary or legally justified "part [o]f the process" that "helps them settle faster."

54. In the complaint below, the client indicates they were advised to stop making payments, their credit was ruined, and they cannot reach anyone at SCRC. In its public response, SCRC admits the person has been a client for almost five months and all that SCRC has done is send a Letter of Representation. There is no indication by the client or SCRC of CALG's involvement. SCRC then refers its "client" to a suicide prevention hotline:

**Initial Complaint**

Date: 03/15/2026

Type: Customer Service Issues

Status: Answered

I am a client. When I singed my agreement I was advised to stop making my solar payments. I was told they would make sure my credit stayed in good standing, stopping my monthly payments was part if the process. After 30 day I received a notice that my payment was late and immediately called [redacted] to fix it. I called [redacted] services and they provided me with a number to call for a credit repair service they work with, [redacted] removed to late report but it was reported again after 60 days. I called the solar company and they stated that solar cancelation never contacted them to inform them of litigation so I called and spoke to a representative that assured me this would be escalated. We are suffering a lot of retaliation for this fraud and by Freedom and Mosaic. At this point I am getting frustrated because I feel like I am being scammed, this case is dragging on, I am being billed and me credit is being destroyed. I was notified today my once 789 credit score is now 543 and when I called the headquarters to get help with this I was informed I was on a "do not call list". Which causes further distress because the last time I spoke to them we ended on good terms.. I feel suicidal because my credit is now destroyed because of Solar Cancelations. I would have never stopped paying if they did not insist as "it helps them settle faster". The solar company left my home a fire hazard, completed half the work and wired my home wrong, then refused to fix it for six years, then sold our contract. The last email I received was from last week letting me know they received my documents so I am confused. I am a good person that a lot of bad things are happening to, so I am scared and reactive, but that is because I am starting to feel suicidal from all the pressure, its not my fault. I do not want to sue Solar Cancelations, the CR's have always been nice and I am hoping this is all just a misunderstanding. If this case was filed [redacted] would not be attacking me.

**Business Response**

Date: 04/10/2026

Dear [redacted],

Thank you for sharing the details of your situation. We are truly sorry to hear how stressful and difficult this has been for you. We take your concerns very seriously, especially regarding the emotional toll this process has taken.

We want to address your recent experience directly. If you felt you were placed on a do not call list when trying to reach us, we sincerely apologize for any frustration this caused. That is not the experience we want any of our clients to have. Your case is important to us, and we are committed to communicating with you clearly and promptly.

Your file was opened on October 29, 2025. A Letter of Representation was sent to Mosaic, and we are continuing to follow up with them on the credit reporting.

We are reviewing your case internally and will provide you with a clear update as soon as possible. In the meantime, if you have any additional information, please feel free to reply to this message or call us at [redacted].

If you are experiencing significant emotional distress, please know that support is available 24/7 by calling or texting 988 (National Suicide Prevention Lifeline).

Thank you for your patience. We are here to help you through this process.

Respectfully,

[redacted]

Client Success Manager

Solar Cancellation Resource Center

55. In another complaint from the same website, dated July 14, 2026, SCRC's client complains that he has paid $9,000 dollars with no proof of what has been done to cancel the solar contract and can only reach a receptionist at SCRC. SCRC responds and admits that the money was paid in October of 2025, and that the case milestones – nine months later – consist only of sending demand letters. Again, there is no indication by the client or SCRC of CALG's involvement:

**Initial Complaint**

Date: 07/14/2026

Type: Product Issues

Status: Answered

I want the attorney to contact me with more details about [illegible] mom's case I keep talking to receptionist but she has not sent me any proof of what they have done [illegible] mom spent $4500 for each of our accounts to hire these attorneys to cancel my solar panels with Tesla and I want solar cancellation attorney to let me know if Tesla going to remove the solar panels For [illegible] At [illegible] Phone number is [illegible]

**Business Response**

Date: 07/17/2026

To the Better Business Bureau Dispute Resolution Team,
Thank you for bringing Mr. [illegible] concerns to our attention. We take all client feedback seriously and welcome the opportunity to clarify the status of both accounts. We fully understand the clients' desire for updates regarding their cases against Tesla and SolarCity. We would like to assure both the Bureau and the consumer that the critical legal work they retained our firm to perform has been actively executed.
Both files are open, active, and moving forward through the legal process.
Please see the verified timeline of events below:
Account Retention: Both accounts were successfully established and paid in full on October 17, 2025, for $4,500 each, totaling $9,000 for dual representation.
[illegible] Case Milestone: A formal legal demand letter was successfully drafted, finalized, and issued directly to Tesla on May 22, 2026.
[illegible] Case Milestones: A formal legal demand letter was issued to Tesla on May 28, 2026. Following further case review, an additional, targeted legal demand letter was issued to SolarCity on June 22, 2026.
Resolution and Next Steps: The formal legal actions required to initiate the solar cancellation process have been executed, and corporate demands have been officially served to both Tesla and SolarCity. While our primary focus has been on executing the necessary legal work behind the scenes, we understand the client's desire for real-time updates. We are eager to share these milestones directly with the [illegible] family to provide complete peace of mind.
We believe this fully addresses the consumer's request for proof of work. Our focus remains entirely on holding Tesla and SolarCity accountable, and we look forward to guiding the [illegible] family through the next stages of this legal process.

56. SCRC's and CALG’s advertising, instruction, or advice to stop paying solar contracts drives down the customers’ credit scores and increases the possibility that their contracts could be accelerated and become fully due and payable.

57. In addition to participating in the false advertising, CALG carries out the scheme by sending boilerplate letters to solar providers. The letters reflect no individualized investigation or meaningful legal analysis. They are mass-produced tools intended to make it appear that legal proceedings are underway or forthcoming, convincing customers to stop making monthly payments and instead pay a large fee to Defendants. The fees that SCRC’s clients pay are not reasonable fees for sending a boilerplate letter. Defendants then use the resulting delinquencies and defaults as leverage to attempt to extract even more money for themselves from solar companies like EnFin.

58. CALG sends two general versions of form letters to EnFin’s customers. The first version directs that all communication with the client shall be through CALG, alleges a generic “dispute,” demands that collection efforts cease, and requests copies of all documents related to the solar project or financing. A redacted example is attached as Exhibit “A.”

59. The second version alleges consumer and contract law violations, contains a list of boilerplate “facts,” a section titled “claims” that cites to Florida’s

Deceptive and Unfair Trade Practices Act, common law fraud, and the FTC Holder Rule, then a list of "damages" and a demand. The only thing unique in the letter appears to be the customer's name and the dollar amount of their contract and alleged damages. A redacted example is attached as Exhibit "B".

60. In fact, in the spring of 2026, when questioned by EnFin's outside counsel regarding the voluminous number of boilerplate demand letters, CALG acknowledged to EnFin's outside counsel that their letters were generic and needed to be redone.

61. Any prospective clients who reach out to CALG through CALG's website by providing their contact information are required to "review[] and accept the terms of use and privacy policy":

> By providing my contact details, I agree to receive marketing and customer care calls and text messages from Consumer Advocacy Law Group, including communications to provide status updates and notifications regarding my case or lawsuit, facilitate communication between the law firm and me about case details, as well as appointment confirmations, service updates, account alerts, and occasional promotional offers (if applicable). These communications may be delivered using automated technology or prerecorded messages. I confirm that I have reviewed and accept the terms of use and privacy policy. Message and data rates may apply. To opt out of future messages, reply STOP at any time. For assistance, reply HELP. Message frequency may vary, and you can unsubscribe at any time.[8]

[8] *See* https://consumeradvocacylaw.com/contact/, last accessed on August 6, 2026.


LEÓN COSGROVE JIMÉNEZ, LLP
255 ALHAMBRA CIR., 8TH FLOOR | MIAMI, FL 33134 | T 305.740.1975 | WWW.LEONCOSGROVE.COM

62. Although CALG's prospective clients are led to believe they are agreeing to CALG's "terms of use and privacy policy," the hyperlinks provided are actually to SCRC's terms and policies. Those terms and policies purportedly grant SCRC authorization to, among other things, pull client credit information from consumer reporting agencies; communicate with CALG's potential clients, and provide recommendations regarding potential financial products.

63. CALG thus misleadingly induces its prospective clients to agree to terms and conditions and a privacy policy with SCRC, presumably so that both entities can profit from them.

64. CALG and Fonbuena further use SCRC to attempt to evade their ethical obligations as attorneys. The overt solicitation of clients, the "100% satisfaction," "100% favorable outcome," and similar guarantees that SCRC makes are of the type that lawyers are prohibited from making. Yet, CALG and Fonbuena are aware of and profit from that advertising. CALG’s website lists SCRC as its “National Intake Partner,” and also links its potential clients to SCRC’s terms and conditions and privacy policy. CALG knows it is being represented as the provider of the legal services advertised and promised by SCRC.

65. Any suggestion that CALG is engaged in an innocent arms-length arrangement with SCRC is dispelled by the facts in the above paragraph and also the fact that SCRC and CALG, until at least July 30, 2026, advertised that they maintain

offices at the same address: 3320 N. Buffalo Dr., Suite 208, Las Vegas, Nevada 89129.[9] In addition, SCRC and CALG employees apparently share access to email addresses across company domains; for example, at least one CALG employee has access to and uses both clientservices@solarcancellationrc.com and clientservices@consumeradvocacy-law.com.

66. CALG receives financial benefits from SCRC in connection with this unlawful solar-contract-cancellation scheme. By accepting SCRC-solicited leads, allowing SCRC to advertise legal services that reference CALG attorneys, and sending form letters that falsely suggest SCRC's sales pitch is generating results for the client, CALG knowingly contributes to and materially participates in SCRC's false advertising and contract interference.

### *C. SCRC and CALG Are Replicating Fonbuena's Past Unlawful Activities.*

67. Defendants' business model is not new. CALG's CEO, Fonbuena, previously operated or promoted illegitimate contract-cancellation services in the timeshare industry through entities or brands including Fonbuena Law and Timeshare Defense Attorneys, where he was identified as a managing partner.

68. There has been extensive investigation into and against timeshare-exit marketers and their affiliated law firms, including in this District and against

[9] https://solarcancellationrc.com/home-one-page-landing/, last visited July 30, 2026; and https://consumeradvocacylaw.com/contact/, last visited July 30, 2026.

Fonbuena himself. Those cases describe the same core mechanics at play here: false advertising of "legal" services; promises of guaranteed contract cancellation; the collection of hefty upfront consumer fees; attorney or law-firm branding to "legitimize" the operation; form demand letters; directions or incentives not to pay; and resulting defaults.

69. In *Wyndham Vacation Resorts, Inc. v. Timeshare Exit Hotline a/k/a Airtime Media, LLC*, and the *Capital Resorts Group, LLC v. Fonbuena Law Firm*, matters, the actions arose from Fonbuena's timeshare-exit enterprise, which apparently had the same architecture present here. The cases quickly settled, and the Fonbuena defendants agreed to stop advising or inducing customers to stop paying or breach their timeshare financial obligations and engaging in false or misleading advertising for timeshare-exit services.

70. Fonbuena, his law firm, and his marketing firm have also been the subject of multiple lawsuits alleging violations of the Telephone Consumer Protection Act of 1991 ("TCPA"). The plaintiffs in those lawsuits alleged Fonbuena's law firm or marketing firm placed pre-recorded and unsolicited telemarketing calls for purposes of promoting legal services. Like the timeshare cases, the TCPA cases were also quickly settled.


LEÓN COSGROVE JIMÉNEZ, LLP
255 ALHAMBRA CIR., 8TH FLOOR | MIAMI, FL 33134 | T 305.740.1975 | WWW.LEONCOSGROVE.COM

71. Defendants' current solar-cancellation enterprise thus appears to be built upon Fonbuena's past schemes, but this time with a new target: Solar energy providers, like EnFin, and their customers.

### *D. SCRC Targets EnFin Customers and Has Harmed EnFin's Contractual Relationships.*

72. SCRC targets EnFin customers as part of its scheme with CALG. For example, SCRC's public blog post titled, "How to Get Out of a Solar Contract: The Complete 2026 Homeowner’s Guide to Solar Cancellation, Rescission, and Legal Review," is on its website at solarcancellationrc.com.[10] The post cites to various laws and legal theories and suggests that a “realistic timeline” to a negotiated resolution “typically takes 3 to 9 months from the point a formal dispute strategy is initiated.” As seen in the above-cited public complaints, rather than resolution, all that happens in that timeline is a fee being collected and mere boilerplate demand or generic representation letters being sent.

73. EnFin is prohibited from communicating with its customers because they are purported to be represented by CALG. But as the above-cited public complaints illustrate, the client complains about the status of her “case” not to CALG but to SCRC, on a public complaint forum, because SCRC will not take her calls

[10] https://solarcancellationrc.com/how-to-get-out-of-a-solar-contract-2026-guide/, last visited on July 30, 2026.

after accepting a large upfront fee. Meanwhile, beyond initial boilerplate letters, SCRC and CALG do not communicate with EnFin on those individuals' behalf.

74. To date, dozens of customers who have "retained" SCRC or CALG to send boilerplate demand letters to EnFin on their behalf have defaulted on their Customer Solar Agreements. CALG's Florida "clients" default on their Customer Solar Agreements at more than five times the rate of EnFin's typical delinquencies.

75. SCRC's "No more Solar Payments!" representation on its website suggests to EnFin customers that they can stop making payments, and that SCRC's process will result in those customers having "No more Solar Payments." That message reinforces Defendants' broader business model of inducing EnFin customers to stop paying and breach their contracts with EnFin and to instead pay a large fee to Defendants.

76. As a direct and proximate result of Defendants' scheme, EnFin has suffered and continues to suffer substantial financial harm. Defendants' false and misleading representations have caused EnFin direct financial losses through foregone revenue, increased servicing costs, as well as lost future payments.

77. EnFin has also suffered and continues to suffer substantial harm to its business reputation, relationships with its clients, and goodwill. Defendants' scheme is specifically designed to insert SCRC between EnFin and its customers, preventing EnFin from communicating with customers about their account status, addressing

legitimate customer concerns, or assisting customers in resolving any issues with their solar installations. EnFin cannot communicate with its customers who have been told they are legally represented by SCRC or CALG, even when doing so would serve those customers' own interests by enabling EnFin to properly service their solar contracts as intended.

78. In addition, SCRC's advertising characterizes the solar industry, and thus EnFin, broadly in a negative and misleading light, suggesting to consumers that they should not enter into contracts or should walk away from their contractual obligations with legitimate solar providers like EnFin. This narrative, disseminated through SCRC's website and social media advertising, damages EnFin's reputation in the marketplace and undermines consumer confidence in EnFin's products and services.

79. EnFin's losses will continue to escalate unless Defendants are enjoined from continuing their deceptive and unfair practices.

## V. CAUSES OF ACTION

### Count I
### False Advertising in Violation of the Lanham Act, 15 U.S.C. § 1125(a)(1)
### (Against SCRC)

80. EnFin realleges and incorporates by reference the allegations in paragraphs 1-79 above, as if fully set forth herein.


LEÓN COSGROVE JIMÉNEZ, LLP
255 ALHAMBRA CIR., 8TH FLOOR | MIAMI, FL 33134 | T 305.740.1975 | WWW.LEONCOSGROVE.COM

81. SCRC has willfully made false and misleading statements of fact in commercial advertisements that are intended to mislead consumers. The statements were literally false, either on their face or by necessary implication, and were materially misleading. For example, SCRC suggests it can lawfully cancel or invalidate the consumers' contracts with solar providers like EnFin for any client they choose to take a fee from, that the client can make "No more Solar Payments!", that SCRC has been "featured on" major media outlets, and that its services have "100%" "guaranteed" and "favorable" results.

82. SCRC, however, is not licensed to practice law, and cannot deliver on any of the promises in its advertising.

83. SCRC's advertising is disseminated nationally via the internet and social media and directly targets consumers across state lines, including in Florida. Accordingly, SCRC's conduct is squarely within interstate commerce as required by 15 U.S.C. § 1125(a).

84. SCRC's false and misleading statements constitute commercial speech made by SCRC that is intended to target and divert EnFin's and other solar providers' existing customer relationships for SCRC's own financial gain.

85. SCRC's false and misleading advertising has deceived and has the capacity to deceive a substantial segment of the consuming public, including EnFin's customers and potential customers, as evidenced by the fact that multiple EnFin

customers upon meeting with SCRC have stopped making payments on their contracts with EnFin, citing SCRC's purported legal representation of them.

86. SCRC's deception is material, in that consumers are induced by these false representations to retain SCRC's services, to stop making payments to EnFin, and to refuse direct communications with EnFin—none of which they would do absent SCRC's false assurances of legal representation and guaranteed favorable outcomes.

87. SCRC's false and misleading advertising directly harms EnFin by inducing EnFin's customers to stop making payments in breach of their Customer Solar Agreements, by causing potential customers to avoid relationships with EnFin, and by harming EnFin’s reputation and goodwill in major solar markets, such as Florida.

88. EnFin's injuries fall within the zone of interest protected by the Lanham Act and are proximately caused by SCRC’s deception. EnFin and SCRC compete directly for the same payment stream: every dollar a customer diverts to SCRC’s fees in reliance on its false advertising is a dollar withheld from EnFin under a Customer Solar Agreement. EnFin’s lost payments and reputational injury are therefore direct, not merely derivative of consumer harm.


LEÓN COSGROVE JIMÉNEZ, LLP
255 ALHAMBRA CIR., 8TH FLOOR | MIAMI, FL 33134 | T 305.740.1975 | WWW.LEONCOSGROVE.COM

89. EnFin is a direct target and foreseeable victim of SCRC's false advertising, and SCRC's revenue depends on those customers ceasing or threatening to cease performance under Customer Solar Agreements.

90. SCRC's statements are not merely aspirational or puffery. They are specific representations about the source, nature, characteristics, and quality of SCRC's services—namely, that the services are attorney-led, legally supported, and capable of guaranteeing the legal cancellation or invalidation of binding contractual obligations.

91. Pursuant to 15 U.S.C. § 1117, EnFin is entitled to recover: (1) its actual damages sustained as a result of the false advertising; (2) SCRC's profits resulting from its false advertising; and (3) the costs of this action.

92. Pursuant to 15 U.S.C. § 1116, EnFin seeks a permanent injunction to prevent further violations by SCRC of 15 U.S.C. § 1125(a).

**Count II**
**Contributory False Advertising in Violation of the Lanham Act, 15 U.S.C. § 1125(a)(1)**
**(Against CALG and Fonbuena)**

93. EnFin realleges and incorporates by reference the allegations in paragraphs 1-79 above, as if fully set forth herein.

94. As described above, and in violation of the Lanham Act, 15 U.S.C. § 1125(a)(1), SCRC has willfully and egregiously made false and misleading statements of fact in commercial advertisements and intended to mislead consumers


LEÓN COSGROVE JIMÉNEZ, LLP
255 ALHAMBRA CIR., 8TH FLOOR | MIAMI, FL 33134 | T 305.740.1975 | WWW.LEONCOSGROVE.COM

into breaching their contracts with EnFin, causing injury to EnFin. The statements were literally false, either on their face or by necessary implication, and were materially misleading.

95. CALG and Fonbuena have materially contributed and continue to contribute to SCRC's false and misleading advertising by knowingly inducing or causing the conduct, or by materially participating in it. See Duty Free Ams., Inc. v. Estée Lauder Cos., 797 F.3d 1248, 1277 (11th Cir. 2015).

96. CALG's and Fonbuena's knowledge of and material participation in that advertising is demonstrated by, among other things, the following:

a) By entering into and operating pursuant to a referral arrangement with SCRC that rewards both Defendants based on volume of clients generated, which financially incentivizes aggressive, false and misleading advertising by SCRC;

b) CALG (Fonbuena's law firm) advertises itself as a "National Intake Partner" for SCRC;

c) CALG knows that it is being represented as the provider of the legal services for which SCRC solicits customers;

d) By misleading potential clients to enter into contractual agreements with SCRC;

e) By knowingly accepting client referrals and receiving compensation generated by SCRC's false and misleading advertising;


LEÓN COSGROVE JIMÉNEZ, LLP
255 ALHAMBRA CIR., 8TH FLOOR | MIAMI, FL 33134 | T 305.740.1975 | WWW.LEONCOSGROVE.COM

f) By participating in the scheme where SCRC/CALG clients do not know who is representing them legally;

g) By knowingly permitting SCRC to direct the course of purported legal representation between CALG and its purported clients;

h) CALG deliberately uses SCRC to obtain and interface with clients in violation of ethical rules;

i) CALG's website links CALG's potential clients to SCRC's terms of use and privacy policy;

j) CALG has direct knowledge of SCRC's false and misleading advertising and, on information and belief, participates in creating that advertising; and

k) By sending boilerplate demand letters to EnFin on behalf of clients recruited through SCRC's false advertising, thereby lending a further appearance of legitimacy to SCRC's scheme and reinforcing the false impression held by clients that legal proceedings are underway or forthcoming on their behalf.

97. CALG and Fonbuena are aware of and explicitly or implicitly encourage SCRC's false advertising because its business—including the client referrals and associated fees that CALG and Fonbuena (as owner of CALG) receive in connection with the above-described scheme—depends on and profits from SCRC's false and misleading marketing activities.

98. CALG and Fonbuena's knowledge and control are further demonstrated by the fact that SCRC and CALG share the same office address and

that at least one CALG employee uses email accounts on both companies' domains, confirming that CALG does not operate at arm's length from the advertising it benefits from and has the ability to monitor and control it.

99. CALG and Fonbuena (as owner of CALG) financially benefit from SCRC's false advertisements in the form of client referrals and fees paid by or through those clients. Much, if not all, of CALG's revenue from solar cancellation matters derives from consumers solicited through SCRC's false and misleading advertising.

100. Pursuant to 15 U.S.C. § 1117, EnFin is entitled to recover: (1) its actual damages sustained as a result of the false advertising; (2) CALG and Fonbuena's profits resulting from its contributory participation in SCRC's false advertising; and (3) the costs of this action.

101. Pursuant to 15 U.S.C. § 1116, EnFin seeks a permanent injunction to prevent further contributory violations by CALG of 15 U.S.C. § 1125(a).

**Count III**
**Violation of Florida's Deceptive and Unfair Trade Practices Act, Fla. Stat. §§ 501.201 et seq.**
**(Against SCRC, CALG, and Fonbuena)**

102. EnFin realleges and incorporates by reference the allegations in paragraphs 1-79 above, as if fully set forth herein.

103. This is a cause of action for permanent injunctive relief under Fla. Stat. § 501.211(1) and, in the alternative, for actual damages under Fla. Stat. § 501.211(2).

104. Defendants are engaged in "trade or commerce" as that term is defined by FDUTPA. As alleged above, SCRC advertises, sells, and collects fees for purported solar legal cancellation services to consumers in Florida and across the country. Despite these advertisements, Defendants have no way to deliver on their promise to legally cancel their contract with EnFin, thereby harming EnFin as its customers cease making payments in reliance on SCRC's unauthorized legal advice

105. SCRC is not a law firm and employs no licensed attorneys. While SCRC solicits Florida consumers, through Florida-specific advertising, and holds itself out as entity capable of providing attorney-backed legal case review and representation, SCRC cannot lawfully collect payment for legal services and/or manage clients' legal representation. In fact, such actions performed by a non-lawyer entity constitute the unauthorized practice of law. The actions are deceptive and misleading.

106. Specifically, the Florida Supreme Court has held that closely analogous conduct—advertising and selling the legal services of lawyers to the public through a non-lawyer entity—constitutes the unauthorized practice of law. *Fla. Bar v. TIKD Servs. LLC*, 326 So. 3d 1073, 1080 (Fla. 2021) (reaffirming "the principle that only attorneys licensed to practice law in Florida are authorized to act like a law firm by advertising and selling the legal services of lawyers to the public," reasoning that


LEÓN COSGROVE JIMÉNEZ, LLP
255 ALHAMBRA CIR., 8TH FLOOR | MIAMI, FL 33134 | T 305.740.1975 | WWW.LEONCOSGROVE.COM

because defendant had "no means of producing income except through the provision of legal services," it was "in the business of selling legal services to the public.").

107. As alleged above, CALG and Fonbuena directly participate in this scheme, including by, for example, sending boilerplate demand letters to solar providers that are designed not to achieve legal results for SCRC's clients, but instead are intended to cut off communications between those customers and their solar providers and create the false impression that legitimate legal proceedings or negotiations are underway regarding those customers' solar contracts.

108. Fonbuena is not licensed to practice law in Florida. Nevertheless, he and other CALG attorneys, who are also not licensed to practice law in Florida, send demand letters on behalf of their purported "clients" who reside in Florida, and cite to Florida law. The Florida Supreme Court has held that "corresponding with opposing parties or the attorneys of opposing parties as the representative of a customer in a legal matter," is the practice of law. *The Fla. Bar v. We The People Forms And Serv. Ctr. of Sarasota, Inc.*, 883 So. 2d 1280, 1282 (Fla. 2004). These are deceptive and misleading actions.

109. EnFin is an "[i]nterested party or person" as that term is defined by Fla. Stat. § 501.203(6), because Defendants' deceptive and unfair practices have caused and continue to cause EnFin to suffer actual losses.

110. As described in more detail above, Defendants have engaged in deceptive and unfair acts and practices in the State of Florida.

111. As described in more detail above, Defendants knew or should have known that their conduct was deceptive and unfair. Defendants intended that SCRC's false representations would induce consumers to cease payments to EnFin and also harm the very consumers who rely on SCRC’s advertised services.

112. Defendants' conduct constitutes unconscionable commercial practices, deception, fraud, false pretenses, misrepresentation, and the knowing concealment and suppression of material facts, all in violation of FDUTPA.

113. As a direct and proximate result of Defendants' deceptive and unfair conduct, EnFin has suffered financial losses, because Defendants' deceptive acts caused EnFin's Florida-based customers to stop making payments on their Customer Solar Agreements.

114. Defendants' deceptive and unfair conduct has caused, and if not enjoined will continue to cause, irreparable harm to EnFin through the ongoing disruption of its customer and contractual relations. EnFin does not have an adequate remedy at law to fully address the harm caused by Defendants' continuing course of conduct.

115. As an aggrieved person under Fla. Stat. § 501.211(1), EnFin is entitled to permanent injunctive relief to stop Defendants’ continued deceptive and unfair


LEÓN COSGROVE JIMÉNEZ, LLP
255 ALHAMBRA CIR., 8TH FLOOR | MIAMI, FL 33134 | T 305.740.1975 | WWW.LEONCOSGROVE.COM

advertising and practices and to prevent future violations, independent of any showing of actual damages. In the alternative, to the extent EnFin has suffered recoverable actual damages under Fla. Stat. § 501.211(2), EnFin seeks those damages, together with its attorneys' fees and costs pursuant to Fla. Stat. § 501.2105.

**Count IV**
**Tortious Interference with Contractual Relations**
**(Against SCRC, CALG, and Fonbuena)**

116. EnFin realleges and incorporates by reference the allegations in paragraphs 1-79 above, as if fully set forth herein.

117. EnFin has valid and existing contractual relationships with its customers in the form of binding Customer Solar Agreements. These Customer Solar Agreements are valid and enforceable contracts.

118. Defendants had actual and constructive knowledge of the Customer Solar Agreements between EnFin and its customers. Indeed, the very basis of Defendants’ business model is to target individuals who are parties to solar agreements, including EnFin's Customer Solar Agreements. Defendants had actual knowledge of specific Customer Solar Agreements between EnFin and its customers through SCRC’s “case review” process, and as demonstrated in CALG’s demand letters.

119. Defendants have acted intentionally and in a manner designed to disrupt and interfere with the contractual relationships between EnFin and its customers.


LEÓN COSGROVE JIMÉNEZ, LLP
255 ALHAMBRA CIR., 8TH FLOOR | MIAMI, FL 33134 | T 305.740.1975 | WWW.LEONCOSGROVE.COM

Defendants have instructed EnFin customers to stop making payments on their Customer Solar Agreements, in violation of the terms of those Agreements; have impeded those customers from direct communications with EnFin; and have induced those customers to breach their contracts. Defendants intentionally engaged in this improper and unlawful conduct for their personal gain, taking upfront payments in exchange for advice that customers can legally breach their contracts. Defendants are strangers to the Customer Solar Agreements, are not parties to them, and had no privilege or justification to interfere; their use of improper means—false advertising, unauthorized legal advice, the unlicensed practice of law, and the inducement of breach solely for their own financial gain—defeats any claim of privilege or competition justification.

120. These intentional acts have resulted in actual disruption of EnFin's contractual relationships. EnFin's customers, including numerous EnFin customers located in Florida, stopped making monthly payments around the same time CALG transmitted demand letters to EnFin purportedly on their behalf, resulting in delinquency on their Customer Solar Agreements.

121. By way of specific examples, a Florida customer who was current on his contract when CALG sent a cease and desist letter in December of 2025, has made no further payments. The customer informed EnFin in January of 2026 that lawyers were involved and for EnFin to contact his lawyer. Another Florida

customer was current on her contract when CALG sent a cease and desist letter in January of 2026, and has since made no further payments. The customer informed Enfin in April of 2026 that she had a lawyer. Another Florida customer made her last payment in April of 2026, two days before EnFin received a cease and desist letter from CALG. Another customer made his last payment in April of 2026, one month after EnFin received a cease and desist letter from CALG, and on the same day EnFin received a second letter from CALG. These EnFin customers previously had performed under their Customer Solar Agreements. If not for Defendant's interference, they would have continued to perform.

122. EnFin has suffered resulting damage, including lost payments, increased servicing costs, costs associated with attempting to re-establish contact with affected customers, and harm to EnFin's ongoing customer relationships and business goodwill.

123. Defendants' conduct is intentional, willful, and malicious, and entitles EnFin to an award of punitive damages. Defendants' business model relies intentionally and maliciously on painting entities in the solar industry, which includes EnFin, as predators in an effort to encourage consumers to hire Defendants to help them "exit" their Customer Solar Agreements.

124. EnFin is entitled to damages against SCRC and CALG jointly and severally.


LEÓN COSGROVE JIMÉNEZ, LLP
255 ALHAMBRA CIR., 8TH FLOOR | MIAMI, FL 33134 | T 305.740.1975 | WWW.LEONCOSGROVE.COM

**Count V**
**Civil Conspiracy**
**(Against SCRC, CALG, and Fonbuena)**

125. EnFin realleges and incorporates by reference the allegations in paragraphs 1-79 above, as if fully set forth herein.

126. Defendants have entered into an agreement, express or implied, to engage in an unlawful scheme: specifically, to falsely hold SCRC out as a provider of attorney-led legal services; to induce solar customers, including EnFin's customers, to cease making payments on their valid and enforceable Customer Solar Agreements; and to tortiously interfere with EnFin's contractual relationships with its customers—all for their mutual financial gain. The object of the conspiracy is the commission of the independent torts alleged in this Complaint, including tortious interference with EnFin’s contractual relationships and violations of FDUTPA.

127. As discussed above, Defendants have committed overt acts in furtherance of this conspiracy, including but not limited to SCRC's, CALG’s, and Fonbuena’s dissemination of false and misleading advertisements across the internet and social media, falsely representing that SCRC provides attorney-led legal services and guaranteeing favorable consumer outcomes; SCRC's instruction to EnFin customers to stop making payments on their Customer Solar Agreements and to refuse direct communications with EnFin; CALG's (and Fonbuena’s) acceptance of referrals from SCRC and decision to enter into fee arrangements that directly

depend on and are funded by SCRC's false advertising scheme; CALG's requirement that potential clients enter into contractual agreements with SCRC; and CALG's and Fonbuena's transmission of boilerplate demand letters to EnFin designed to cut off EnFin's communications with its customers and to further the false impression that legal negotiations or proceedings are being pursued on behalf of SCRC's clients.

128. No one Defendant could accomplish this scheme without the others. SCRC's advertising of attorney-led services and guaranteed favorable legal outcomes would immediately be exposed as false without CALG's willingness to accept referrals and send letters purportedly on behalf of SCRC's clients. And CALG and Fonbuena benefit from the scheme through the client referrals and fees generated by SCRC's false and misleading advertising. SCRC and CALG are separate and legally distinct entities—organized under the laws of different states and maintaining separate corporate forms—and are therefore capable of conspiring with one another. Fonbuena is an individual capable of conspiring with SCRC. Each also acted with an independent personal stake in achieving the scheme's unlawful objects, separate and apart from any single enterprise.

129. As a direct and proximate result of the conspiracy, EnFin customers have breached or ceased performing their contractual obligations, EnFin has suffered financial losses, and EnFin has been unable to communicate with and effectively service the solar system for its own customers.


LEÓN COSGROVE JIMÉNEZ, LLP
255 ALHAMBRA CIR., 8TH FLOOR | MIAMI, FL 33134 | T 305.740.1975 | WWW.LEONCOSGROVE.COM

130. As described above, SCRC and CALG acted willfully and with malice in furtherance of their conspiracy, and their conduct entitles EnFin to an award of punitive damages.

131. Defendants are jointly and severally liable to EnFin for all damages caused by their conspiracy.

## VI. REQUEST FOR RELIEF

Plaintiff prays for judgment against Defendants as follows:

1. Actual damages suffered by EnFin as a result of Defendants' unlawful conduct;
2. Disgorgement of SCRC's profits obtained through its unlawful conduct;
3. Punitive damages against SCRC, CALG, and Fonbuena for their intentional, willful, and malicious conduct;
4. Entry of permanent injunctive relief against SCRC, CALG, and Fonbuena as well as their agents, representatives, employees, and affiliates, prohibiting Defendants from:
   a) publishing or disseminating any advertisement that falsely represents that SCRC provides attorney-led or attorney-provided legal services, guarantees successful contract cancellation, or can legally cancel or invalidate solar agreements;
   b) instructing, advising, or encouraging EnFin's customers to stop making payments on their Customer Solar Agreements;


LEÓN COSGROVE JIMÉNEZ, LLP
255 ALHAMBRA CIR., 8TH FLOOR | MIAMI, FL 33134 | T 305.740.1975 | WWW.LEONCOSGROVE.COM

c) interfering with EnFin's ability to communicate with its own customers; and

d) engaging in the unauthorized practice of law;

5. Costs of suit;

6. Pre- and post-judgment interest as permitted by law; and

7. Such other and further relief as the Court may deem just and proper.

## VII. DEMAND FOR JURY TRIAL

Pursuant to Rule 38 of the Federal Rules of Civil Procedure, EnFin demands trial by jury in this action to all issues so triable.

Dated: August 26, 2026

Respectfully submitted,

By: */s/ Marcos Daniel Jiménez*

Marcos Daniel Jiménez
Florida Bar No. 441503
Andrew B. Boese
Florida Bar No. 824771
**LEÓN COSGROVE JIMÉNEZ, LLP**
255 Alhambra Circle – 8th Floor
Miami, Florida 33134
Telephone: 305-740-1975
Email: mdj@leoncosgrove.com
Email: aboese@leoncosgrove.com
Email: bcabellero@leoncosgrove.com
Email: rmartinez@leoncosgrove.com

*Counsel for Plaintiff EnFin*