UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

ENFIN CORP., a Delaware Corporation,

Plaintiff,

v.

Case No.: 6:26-cv-01885

SOLAR CANCELLATION RESOURCE CENTER LLC, a Wyoming limited liability company; FONBUENA LAW FIRM, CHTD., d/b/a CONSUMER ADVOCACY LAW GROUP, a Nevada law firm, and RICHARD FONBUENA, an individual,

Defendants.
______________________________________/

**MOTION TO DISMISS AND TRANSFER VENUE BY SCRC AND CALG**

Defendants, Solar Cancellation Resource Center LLC ("SCRC") and Consumer Advocacy Law Group ("CALG," together with SCRC, "Defendants"), through counsel and pursuant to Federal Rules of Civil Procedure 12(b)(6) and 12(b)(3), and 28 U.S.C. §§ 1404(a) and 1406(a), move to dismiss the Complaint filed by Plaintiff, EnFin LLC ("EnFin") and to transfer venue, and state:

**SUMMARY OF THE ARGUMENT**

This case is a dispute between a lender and its own borrowers over unpaid loans, repackaged as claims against those borrowers' counsel and a marketing

company, through which the lender asks this Court to silence counsel's advocacy on behalf of its clients. EnFin, a residential solar lender, alleges that its existing borrowers encountered SCRC's purportedly false advertisements and retained SCRC and CALG, that CALG sent demand letters to EnFin, and borrowers stopped paying their solar loans. Each affected borrower was already bound by an existing loan agreement before encountering SCRC's advertising, so no purchasing decision was diverted, and the Complaint does not identify a single advertisement that names EnFin specifically.

More importantly, EnFin's own allegations defeat the causation requirements of each claim. EnFin does not plead that any borrower saw an SCRC advertisement and stopped paying. Instead, it pleads that borrowers stopped paying only after a chain of independent, intervening decisions — contacting SCRC, meeting with it, retaining SCRC and CALG, receiving legal advice, and then breaching their existing loan agreements. Under *Lexmark*, a Lanham Act injury must flow *directly* from deception in the challenged advertising. An injury several steps removed from the advertisement — one that might have resulted from any number of other reasons instead — is too remote to be actionable. The same defect sinks EnFin's FDUTPA claim (Count III), which requires direct rather than speculative causation, and its tortious-interference claim (Count IV), which requires intentional procurement of a breach the borrower would not otherwise have committed. EnFin pleads only

temporal proximity and legal conclusions, consistent with the obvious alternative explanation that borrowers inclined to stop payment sought Defendants' services.

Count II, for contributory false advertising, is derivative of Count I and fails with it. It independently fails because the Complaint alleges only that CALG furnished ordinary downstream legal services, not that it created, controlled, or materially participated in SCRC's advertising.

Count III (FDUTPA) fails for multiple independent reasons. First, EnFin pleads quintessential consequential damages that FDUTPA does not permit. Second, EnFin's theory rests on an unauthorized-practice-of-law allegations, but licensing and unlicensed practice of law ("UPL") violations cannot serve as FDUTPA predicates. Third, a private party with no attorney-client relationship cannot repackage a UPL claim it has no standing to assert as a FDUTPA violation. Fourth, CALG's pre-suit demand letters asserting clients' claims and offering settlement are not "trade or commerce" subject to FDUTPA.

Count IV (tortious interference) additionally fails because EnFin pleads interference only with the community at large, never identifying a single customer, contract, or breached term as Florida law requires. And Count V (conspiracy) fails because civil conspiracy is not an independent tort and collapses once the underlying claims are dismissed.

EnFin's state-law claims are grounded in fraud but fail to satisfy Rule 9(b)'s particularity requirements. Compounding this pleading problem, the Complaint is a shotgun pleading that both impermissibly lumps SCRC and CALG (and Fonbuena) together and incorporates all general allegations into each count, obfuscating which allegations of wrongdoing are connected to each individual claim.

Finally, even if any claim survives, this District is the wrong forum. The operative conduct originated with SCRC in Arizona and CALG in Nevada, not Florida, so venue is improper under 28 U.S.C. § 1406(a). In the alternative, the § 1404(a) convenience factors overwhelmingly favor transfer: no party resides in Florida, the witnesses and records are in Arizona and Nevada, EnFin's choice of a non-home forum warrants minimal deference, and any injury centers in California. Defendants respectfully request that the Court dismiss the Complaint with prejudice or, in the alternative, transfer this action to the District of Nevada.

## SUMMARY OF FACTUAL ALLEGATIONS IN THE COMPLAINT[1]

EnFin is a California-headquartered Delaware corporation that services residential solar financing agreements. (Compl. ¶¶ 1, 18, 30, 32, 117.) SCRC, a Wyoming/Nevada company, markets exits from solar contracts advertising attorney-led contract review. (Compl. ¶¶ 7, 19, 34, 41–43.) None of that advertising mentions

[1] Defendants dispute and deny EnFin's allegations and characterizations in the Complaint. Nothing in this Motion should be construed as an admission of any fact or allegation.

EnFin, names its products, or calls its conduct unlawful; the advertising primarily describes SCRC's own services. (Compl. ¶¶ 34, 42–45, 81.)

EnFin alleges its own borrowers' nonpayment of their solar loan agreements follows a sequence events, not any advertisement itself. EnFin contends a homeowner responds to SCRC's marketing, undergoes a "case review," pays a fee and retains SCRC, and only then, "upon meeting with SCRC" and in reliance on "purported legal representation," stops paying their contracts. (Compl. ¶¶ 38, 50, 53, 85–86.) The Complaint's non-conclusory allegations attribute the advertising to SCRC, and assigns CALG, the Nevada firm owned by Fonbuena, a downstream role: accepting SCRC referrals and sending demand letters, two forms of which are attached as Exhibits A and B, which notify of disputes and assert claims, and settlement offers. (Compl. ¶¶ 20, 22, 57–58, 66, 96(a)–(k); Exs. A–B.)

EnFin's tortious-interference count offers four anonymized "Florida customer" examples, each alleging only that payments stopped around the time a CALG letter arrived, without identifying the customer, contract, or breached term. (Compl. ¶¶ 120–21.) Its FDUTPA count alleges that "Defendants' deceptive acts caused" customers to stop paying and rests on the premise that SCRC engaged in the unauthorized practice of law; the damages pleaded are foregone revenue, servicing costs, lost future payments, and harm to reputation and goodwill. (Compl. ¶¶ 76–77, 104–05, 112–13.) Finally, the operative conduct, the advertising, the referral

relationship, and the demand letters, originates with SCRC's Wyoming/Nevada operations and CALG's Nevada office, while EnFin itself is a California-based Delaware entity; the connection to this District that EnFin pleads is that some customers reside in Florida, saw SCRC's advertising there, and that directed demand letters to EnFin in Florida. (Compl. ¶¶ 18–20, 24–25, 49, 57–58.)

## **LEGAL STANDARD ON A MOTION TO DISMISS**

To survive a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), a complaint must contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). Although the Court must accept well-pleaded factual allegations as true and construe them in the light most favorable to the plaintiff, it is not required to accept legal conclusions couched as factual allegations. *Ashcroft v. Iqbal*, 556 U.S. 662, 678–79 (2009). A complaint must contain more than "labels and conclusions" or "a formulaic recitation of the elements of a cause of action." *Twombly*, 550 U.S. at 555. Likewise, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements," are insufficient to state a claim. *Iqbal*, 556 U.S. at 678. Where the well-pleaded facts do not permit the Court to infer more than the mere possibility of misconduct, the complaint has not shown that the pleader is entitled to relief and must be dismissed. *Id.* at 679. The Court may dismiss

a Complaint with prejudice when amendment would be futile. *Bryant v. Dupree*, 252 F.3d 1161, 1163 (11th Cir. 2001).

## ARGUMENT FOR DISMISSAL

### I. EnFin's own allegations preclude standing and causation under the Lanham Act.

Count I (Lanham Act)[1] fails at the threshold requirements of statutory standing and proximate cause. The Lanham Act "extends only to plaintiffs whose interest fall within the zone of interests protected by" the Act. *Lexmark Int'l, Inc. v. Static Control Components, Inc.*, 572 U.S. 118, 129 (2014). The Lanham Act's goal is to protect against unfair competition, so a Lanham Act plaintiff must allege injury to a commercial interest in reputation or sales. *Id.* at 131-32.

Similarly, a Lanham Act plaintiff must sufficiently allege proximate cause, which requires allegations of "economic or reputational injury flowing *directly* from the deception wrought by the defendant's *advertising*." *Id.* at 133 (emphasis added). Where the causal chain is too attenuated – when an intervening "discontinuity" means the injury "might instead have resulted from 'any number of [other] reasons'" – the claim cannot stand. *Id.* at 134, 140.

EnFin also fails to both fall within the protected "zone of interests" and fails to plausibly allege proximate cause. EnFin does not allege that any borrower saw an SCRC advertisement and, as a result, stopped paying. If the advertising itself caused the injury, EnFin would allege defaults untethered to retention of SCRC and CALG.

It does not do so. Instead, it alleges nonpayment following a series of distinct events: (1) the borrower's decision to contact and meet with SCRC; (2) the borrower's decision to retain SCRC; (3) the legal advice the borrower received after retention; and (4) the borrower's decision to stop performing an existing contract.

EnFin's assertion that its injury was "proximately caused by SCRC's deception" and that payments were withheld "in reliance on its false advertising," (Compl. ¶ 88), are legal conclusions, not facts. *Iqbal*, 556 U.S. at 678. Similarly, EnFin's vague assertions that potential customers avoid relationships with EnFin are conclusory, need not be credited, and cannot override the specific factual allegations that locate the cause of nonpayment in the retention relationship.

EnFin may respond that the advertisements induced borrowers to retain SCRC, so the deception carried through the retention relationship to the default. That theory does not cure the standing or causation defect. *Lexmark* permits consumer deception as the single intervening step between the advertisement and the lost trade (for example, false statements about a competitor that drive away customers). *Id.* at 133. EnFin's causation theory is simply too attenuated.

Courts analyzing statutory standing and proximate cause in similar contexts have dismissed claims similar to EnFin's. *Wyndham Vacation Ownership v. Reed Hein & Associates, LLC*, held the plaintiff lacked statutory standing, and their injury was "too remote" and "not the type of interest the Lanham Act was intended to

protect" where the consumers stopped paying their contracts after the defendant solicited and retained the customer, not from the challenged advertisement itself. No. 6:18-cv-02171-GAP-DCI, 2019 WL 2232241, at *1, *3 (M.D. Fla. May 23, 2019). This is the identical sequence EnFin pleads here. While the court later declined to dismiss Wyndham's amended complaint, it noted that plaintiff alleged defendant made false statements specifically targeted at it. *Wyndham Vacation Ownership v. Reed Hein & Associates, LLC*, No. 618CV02171GAPDCI, 2019 WL 3934468, at *5 n.6 (M.D. Fla. Aug. 20, 2019). EnFin's Complaint contains no such allegations.

In *Wesley Financial Group, LLC v. Westgate Resorts, Ltd.*, the Lanham Act claim was dismissed with prejudice, where the challenged ads, even if misleading, only prompted consumers to inquire about their options to cease contractual performance rather than directly causing them to withhold trade. 746 F. Supp. 3d 1342, 1351-52 (M.D. Fla. 2024); *see also Orange Lake Country Club, Inc. v. Reed Hein & Assocs., LLC,* No. 6:17-cv-1542-Orl-78DCI, 2019 WL 7423517, at *14 (M.D. Fla. Oct. 4, 2019) (rejecting at summary judgment "but for" theory linking challenged advertising to a cessation of payments as "too remote"). EnFin's Complaint has the same defect: the conduct it ties to its borrowers' defaults is retention of SCRC and letters that followed, not reliance on any allegedly false advertisement.

In *Lexmark*, the Court found proximate cause adequately alleged for a non-competitor based on features of that case that are absent here. *See* 572 U.S. at 138-40. First, Enfin does not compete with SCRC. EnFin services financing agreements. It does not offer any cancellation or legal service for which SCRC's advertising could divert a sale. EnFin's "same payment stream" theory (Compl. ¶ 88) is an attempt to manufacture competition where none exists. A borrower who retains SCRC is not choosing SCRC's service instead of EnFin's financing. She has already obtained EnFin's financing, and the alleged harm is her later failure to perform. Second, SCRC's advertisements do not disparage EnFin directly. SCRC's challenged statements, such as "attorney-led" review and a "100% favorable outcome" describe SCRC's own services. EnFin does not allege that any SCRC advertisement names EnFin, characterizes its conduct as unlawful, or says anything about EnFin's own products. Third, *Lexmark* relied on the near one-to-one relationship between the defendant's misrepresentations and the plaintiff's lost sales. *Id.* at 139. No comparable relationship exists here. Whether any borrower stops paying EnFin depends not on the advertisements, but on that borrower's own decisions, her particular contract, and the advice she receives after retention, not on any mechanical connection between SCRC's advertising and EnFin's revenue.

Because EnFin's alleged injury flows from its borrowers' independent post-retention decisions, not from any deception in advertising that caused consumers to

withhold trade from EnFin, EnFin is not within the protected "zone of interests" and cannot sufficiently allege proximate cause. Count I should be dismissed.

## II. EnFin fails to plausibly allege proximate cause for Count III (FDUTPA) and Count IV (Tortious Interference).

EnFin also fails to plausibly allege proximate cause for Count III and IV. Causation under FDUTPA[2] (Count III) "must be direct, rather than remote or speculative," and a plaintiff cannot establish causation where the injury depends on the intervening, independent decisions of a third party. *Lombardo v. Johnson & Johnson Consumer Cos., Inc.*, 124 F. Supp. 3d 1283, 1290 (S.D. Fla. 2015). EnFin's own theory is that "Defendants' deceptive acts caused EnFin's Florida-based customers to stop making payments on their Customer Solar Agreements" (Compl. ¶ 113), but the Complaint does not plead facts showing Defendants' conduct, rather than each customer's own intervening decision, directly caused that non-payment.

Similarly, for tortious interference with a contract[3] (Count IV), Florida law requires the "intentional procurement" of a breach the contracting party would not

---

[2] A FDUTPA claim has three elements: "(1) a deceptive act or unfair practice; (2) causation; and (3) actual damages." *Caribbean Cruise Line, Inc. v. Better Bus. Bureau of Palm Beach Cnty., Inc.*, 169 So. 3d 164, 166-67 (Fla. 4th DCA 2015).

[3] To state a tortious interference with a contract claim, a plaintiff must allege: "(1) [t]he existence of a contract"; "(2) [t]he defendant's knowledge of the contract"; "(3) [t]he defendant's intentional procurement of the contract's breach"; "(4) [a]bsence of any justification or privilege"; and "(5) [d]amages resulting from the breach." *ECB USA, Inc. v. Savencia Cheese USA, LLC*, 148 F.4th 1332, 1348–49 (11th Cir. 2025) (quoting *McKinney-Green, Inc. v. Davis*, 606 So. 2d 393, 397-98 (Fla. 1st DCA 1992)).

otherwise have committed; a defendant is not liable where the party "already intended to breach" independent of the defendant. *Chicago Title Ins. Co. v. Alday-Donalson Title Co. of Fla., Inc.*, 832 So. 2d 810, 814 (Fla. 2d DCA 2002); *See also ECB USA, Inc. v. Savencia Cheese USA, LLC*, 148 F.4th 1332, 1349 (11th Cir. 2025) (affirming dismissal of tortious interference claim that pleaded only "formulaic recitation of the elements" of the claim). Mere temporal proximity – payments stopping around the time a letter arrives – does not indicate active procurement, nor does EnFin allege when, how, or why Defendants procured any particular customer's breach. Its theory is equally consistent with the "obvious alternative explanation," *Iqbal*, 556 U.S. at 682 (quoting *Twombly*, 550 U.S. at 567), that customers inclined to breach their contracts sought out the Defendants' services. Because EnFin has not and cannot plausibly allege the required elements of causation, Counts III, and IV should each be.

**III. Count II (contributory false advertising) should be dismissed.**

Count II against CALG for contributory false advertising under the Lanham Act fails for three reasons. First, because contributory liability is derivative, Count II necessarily fails because Count I fails. Second, the Complaint does not plausibly allege that CALG (and Fonbuena) acted with the requisite knowledge and materially participated in *creating or controlling* SCRC's advertising, as opposed to furnishing

ordinary downstream legal services after consumers were already solicited. Third, though binding, CALG respectfully submits *Duty Free* was wrongly decided.

**A. Count II fails because the predicate claim against SCRC in Count I is not plausibly pled.**

Contributory false advertising is derivative liability: there is nothing to contribute to unless a "third party in fact directly engaged in false advertising that injured the plaintiff." *Duty Free*, 797 F.3d at 1277. If the direct claim against SCRC is not plausibly pleaded, the contributory claim against CALG necessarily fails. *See Id.* at 1277-78. As set forth in Section I above, EnFin has not and cannot allege that SCRC's *advertising* proximately caused its injury, as required by *Lexmark*. So, there is no viable corresponding claim against CALG. Thus, like Count I, Count II should be dismissed with prejudice.

**B. EnFin fails to plausibly allege that CALG materially participated in SCRC's advertising.**

For contributory false advertising, a plaintiff must plausibly allege that "(1) a third party in fact directly engaged in false advertising that injured the plaintiff; and (2) the defendant contributed to that conduct either by knowingly inducing or causing the conduct, or by materially participating in it." *Duty Free*, 797 F.3d at 1277. "Material participation" requires that the defendant "actively and materially furthered the unlawful conduct" by inducing, causing, or otherwise working to bring about the false advertising. *Id.* Allegations that a defendant was merely "aware of

and has not stopped" a third party's false advertising do not, without more, plausibly establish contributory false advertising. *Id.* at 1270.

In *Duty Free*, allegations that the defendant communicated directly with the third parties responsible for the false statements, shared information with them concerning its relationship with the plaintiff, and knew of the challenged statements, but failed to stop them, were insufficient to infer that the defendant knowingly induced, caused, or materially participated in the false advertising. *Id.* at 1258-61, 1278-79. Instead, it established nothing more than an ordinary business relationship. *Id.*

EnFin's contribution allegations against CALG focus on inactionable conduct. It consistently identifies SCRC as the entity that created, disseminated, and controlled the challenged advertisements. (Compl. ¶ 95.) By contrast, it attributes to CALG and Fonbuena downstream legal service functions that occur *after* a consumer has already responded to SCRC's advertising, such as accepting referrals and fees, permitting SCRC to interface with clients, and sending demand letters. (Compl. ¶ 96(a), (e), (g), (k).) Those acts describe a referral relationship, not participation in the *advertising* itself.

The allegation that CALG "participates in creating that advertising" is pleaded only "on information and belief" and unsupported by any factual content — precisely the kind of conclusory assertion the Court need not credit. (Compl. ¶ 96(j).)

Likewise, the assertions that CALG "knowingly contributes to and materially participates in SCRC's false advertising" (Compl. ¶ 66) is a recitation of the elements of the claim, which the Court should likewise disregard. Absent those conclusory assertions, none of the allegations are sufficiently allege that CALG induced, caused, or materially participated in the false advertising.

### C. Although the Court is bound by *Duty Free*, CALG respectfully submits that Section 1125(a)(1)(B) provides no basis for contributory liability.

Although the text of the Lanham Act does not provide a specific cause of action for "contributory" false advertising, based upon other tort principles, *Duty Free* recognized a contributory cause of action exists. CALG respectfully submits that *Duty Free* was incorrectly decided and raises the following argument to preserve it for appellate review. Section 1125(a)(1)(B) should not be construed to recognize a cause of action for contributory false advertising because the statute contains no textual basis for imposing secondary liability. *See Acad. of Doctors of Audiology v. Int'l Hearing Soc'y*, 237 F. Supp. 3d 644, 666–67 (E.D. Mich. 2017) (observing that, although the Eleventh Circuit recognized contributory false advertising in *Duty Free*, it "appears to stand alone in that regard" and declining to recognize such a claim). Not only is it unsupported by the statute's text, a contributory false advertising claim is inconsistent with *Lexmark*'s proximate cause analysis, requiring "economic or reputational injury flowing *directly* from the deception wrought by the defendant's advertising." *Lexmark*, 572 U.S. at 133 (emphasis added). The Supreme

Court has cautioned against an overly expansive interpretation of the Lanham Act, *Lexmark*, 572 U.S. at 129, which would improperly expand the scope of plaintiffs who could seek redress under it. CALG therefore respectfully submits that Count II fails as a matter of law because Section 1125(a)(1)(B) does not authorize contributory liability.

## IV. Count III (FDUTPA) fails for multiple independent reasons.

FDUTPA prohibits "[u]nfair methods of competition, unconscionable acts or practices, and unfair or deceptive acts or practices in the conduct of any trade or commerce . . . ." Fla. Stat. § 501.204(1). EnFin fails to plausibly allege any actual damages recoverable under FDUTPA. With respect to CALG, the unauthorized practice of law and presuit demand letters cannot form the basis of a FDUTPA claim.

### A. EnFin pleads only unrecoverable consequential damages.

Count III must be dismissed as it seeks consequential damages that are not recoverable under FDUTPA. FDUTPA only permits the recovery of "actual damages," a term of art defined as "the difference in the market value of the product or service in the condition in which it was delivered and its market value in the condition in which it should have been delivered according to the contract of the parties." *Ounjian v. Globoforce, Inc.*, 89 F.4th 852, 860 (11th Cir. 2023) (quotations omitted). "Lost profits are a 'quintessential example' of consequential damages." *Diversified Mgmt. Sols., Inc. v. Control Sys. Rsch, Inc.,* No. 15-81062-CIV, 2016 WL

4256916, at *5 (S.D. Fla. May 16, 2016) (quoting *Nyquist v. Randall*, 819 F.2d 1014, 1017 (11th Cir. 1987)). Competitive harm, lost sales, damage to business reputation, and loss of goodwill are also unrecoverable consequential damages. *BPI Sports, LLC v. Labdoor, Inc.*, 2016 WL 739652, at *6 (S.D. Fla. Feb. 25, 2016).

While *Diamond Resorts International, Inc. v. Aaronson*, permitted a plaintiff to pursue unpaid promissory-note and fee amounts as "lost profits already suffered" it relies upon cases that summarily conclude lost profits are available under FDUTPA without analysis and without discussion of Eleventh Circuit precedent concluding lost profits constitute consequential damages. 371 F. Supp. 3d 1088, 1115 (M.D. Fla. 2019). The court should decline to follow *Diamond Resorts* in light of Eleventh Circuit precedent finding lost profits are quintessential consequential damages. *Nyquist v. Randall*, 819 F.2d 1014, 1017 (11th Cir. 1987); *See also Apotex Corp. v. Hospira Healthcare India Private Ltd*., No. 18-CV-4903 (JMF), 2019 WL 3802096, at *1 (S.D.N.Y. Aug. 13, 2019)*, aff'd*, 827 Fed. Appx. 149 (2d Cir. 2020) (analyzing status of Florida law on lost profits under FDUTPA).

EnFin has alleged only unrecoverable consequential damages. It alleges that it has incurred damages of "direct financial losses through foregone revenue, increased servicing costs, as well as lost future payments" (Compl. ¶ 76), "harm to its business reputation, relationships with its clients, and goodwill." (Compl. ¶ 77.)

These classic categories of consequential damages are unrecoverable under FDUTPA.

**B. The unauthorized practice of law cannot serve as the basis for a FDUTPA claim.**

EnFin's FDUTPA theory rests allegations that SCRC and CALG engaged in the unlicensed practice of law. (Compl. ¶¶ 104-108.) A licensing violation cannot supply a predicate for a FDUTPA claim. In *Naples Motorcoach Resort Homeowners Ass'n, Inc. v. JG&M Properties, LLC*, the court held that statutes barring unlicensed activity are not FDUTPA predicates and declined to reach whether a violation of FDUTPA occurred because the protection such a licensing scheme affords is "totally unrelated to the scope of FDUTPA." 363 So. 3d 1184, 1187-89 (Fla. 6th DCA 2023). By extension, licensing requirements that apply to attorneys cannot form the basis of a FDUTA claim because those licensing requirements are unrelated to the scope of FDUTPA, which is to prohibit "unfair competition or deceptive trade practices." *See Id.* at 1188.

Nor may EnFin, as a private litigant, wield FDUTPA to enforce the Florida Bar's unauthorized-practice rules, particularly when EnFin is not the recipient of the challenged legal services. The Florida Bar, as an arm of the Florida Supreme Court, is vested with the exclusive power to bring unauthorized practice of law ("UPL") claims, subject to a narrow civil damages exception, which is inapplicable here. *Goldberg v. Merrill Lynch Credit Corp.*, 35 So. 3d 905, 907-08 (Fla. 2010). A UPL

claim simply does not extend to third parties with no purported attorney-client relationship with the alleged unauthorized practitioner. *Gonczi v. Countrywide Home Loans, Inc.*, 271 Fed. Appx. 928, 929 (11th Cir. 2008) (dismissing UPL claim by private plaintiff for lack of standing); *Sigma Fin. Corp. v. Inv. Loss Recovery Services, Inc.*, 673 So. 2d 572, 573 (Fla. 4th DCA 1996) (dismissing UPL and FDUTPA claims, as "the deceptive trade practices, if any, were not directed at the appellants but instead were directed at ILRS and Sheen's 'clients.'"). EnFin cannot simply repackage a UPL claim as a FDUPTA claim in an effort to plead around its lack of standing to assert such a claim.

### C. The provision of legal services does not constitute "trade or commerce" within the meaning of FDUTPA.

EnFin's FDUTPA claim against CALG also fails because the provision of legal services on behalf of represented clients is generally not actionable "trade or commerce" under FDUTPA. "[C]onduct by a law firm or lawyers during the provision of legal services is not 'trade or commerce' and is instead the exercise of a legal remedy." *Kurlander v. Kaplan*, No. 819CV00742T02AEP, 2019 WL 3944338, at *8 (M.D. Fla. Aug. 21, 2019) (dismissing FDUTPA claim based upon conduct occurring in the course of legal representation because the conduct did not constitute "trade or commerce"). This is true even if the attorney's conduct is alleged to encompass "deceptive representations" or failing to disclose pertinent information during the course of legal advice. *Id.* The FDUTPA claim against CALG therefore

fails because any provision of services occurred during the course of legal representation of its clients, such as sending demand letters. (Compl. ¶¶ 107-08.)

## V. Count IV (tortious interference) fails because EnFin has not sufficiently identified the allegedly impacted customers.

Florida law does not permit a claim premised on interference with a plaintiff's relationship "to the community at large"; the plaintiff "must prove a business relationship with *identifiable* customers." *Ethan Allen, Inc. v. Georgetown Manor, Inc.*, 647 So. 2d 812, 815 (Fla. 1994). Generic allegations of interference with unspecified "customers" are "too vague and abstract to satisfy the first element of a tortious interference claim." *Coach Servs., Inc. v. 777 Lucky Accessories, Inc.*, 752 F. Supp. 2d 1271, 1273 (S.D. Fla. 2010). EnFin primarily pleads it has "valid and existing contractual relationships with its customers in the form of binding Customer Solar Agreements." (Compl. ¶ 117.) Generic references to an undefined universe of "customers" is the community-at-large allegation Florida law prohibits. *See id.* EnFin never identifies a single customer by name, never attaches or identifies a single Customer Solar Agreement, and never alleges the terms of any specific contract that any defendant supposedly induced a specific customer to breach. The handful of anonymized anecdotes in the Complaint, identify only "a Florida customer" who stopped paying, "[a]nother Florida customer" who did the same, but still does not sufficiently identify any customer, contract, or breached term, and thus do not allege interference with an "identifiable" contractual relationship.

## VI. Count V (civil conspiracy) fails because there is no actionable underlying tort.

EnFin fails to state a claim for civil conspiracy because civil conspiracy is not an independent tort; it requires an underlying actionable wrong. *Raimi v. Furlong*, 702 So. 2d 1273, 1284 (Fla. 3d DCA 1997). Where the underlying claim fails, so does any conspiracy claim premised on it. *Wright v. Yurko*, 446 So. 2d 1162, 1164-65 (Fla. 5th DCA 1984) (finding that where the underlying cause of action is barred, there can be no actionable conspiracy to commit the same act). As argued herein, Enfin failed to state any underlying cause of action, and therefore, conspiracy similarly fails.

## VII. To the extent Counts III, IV, and V sound in fraud, they do not plead with claims with sufficient particularity.

EnFin's FDUTPA, tortious-interference, and civil-conspiracy claims rest on the premise that SCRC and CALG deceived consumers through "false and misleading" advertising promising guaranteed, attorney-led cancellations of solar contracts. Each claim therefore sounds in fraud, and each must satisfy Rule 9(b), but fails to do so.

A party alleging fraud "must state with particularity the circumstances constituting fraud." Fed. R. Civ. P. 9(b). Whether a claim alleges fraud "depends on the factual allegations underlying a plaintiff's claim," not on how the claim is styled. *Pop v. LuliFama.com LLC*, 145 F.4th 1285, 1293 (11th Cir. 2025). When a claim

sounds in fraud, a plaintiff must plead "the who, what, when[,] where, and how" of the conduct, including "(1) the precise statements, documents, or misrepresentations made; (2) the time, place, and person responsible for the statement; (3) the content and manner in which these statements misled the [p]laintiff[]; and (4) what the defendants gained by the alleged fraud." *Id.* at 1296.

Count III charges "Defendants" with "deception, fraud, false pretenses, misrepresentation, and the knowing concealment and suppression of material facts," Compl. ¶ 112, premised on "false representations" designed to induce consumers to stop paying EnFin. (Compl. ¶¶ 104-05, 111.) Yet Count III does not identify a single specific misrepresentation, made at a stated time and place, that misled an identified consumer into stopping payments to EnFin. It offers conclusions instead, such as that "Defendants knew or should have known that their conduct was deceptive and unfair." (Compl. ¶ 111.) As in *Pop*, these unspecified and vague allegations are fatal. 145 F.4th at 1296-97.

Similarly, although Count IV alleges several "improper means," EnFin pleads an overall scheme grounded in fraud. As such, it must be alleged with particularity. *Al Rushaid Petroleum Inv. Co. v. Siemens Energy Inc.*, 159 F.4th 887, 896 (11th Cir. 2025) (affirming dismissal of tortious interference claim sounding in fraud when insufficiently pleaded). However, Count IV does not meet that standard. None of the four customer examples on which it relies identifies any misrepresentation the

customer received, who made it, when, or how it induced the customer to stop paying; each example alleges only that payments stopped around the time EnFin received a CALG letter. (Compl. ¶ 121.) As such, Count IV is insufficiently pleaded.

Civil conspiracy grounded in fraud must satisfy Rule 9(b), *See Am. United Life Ins. Co. v. Martinez*, 480 F.3d 1043, 1065 (11th Cir. 2007), and even when not based upon fraud, must contain "clear, positive, and specific" allegations identifying the "scheme" and its terms. *Eagletech Commc'ns, Inc. v. Bryn Mawr Inv. Grp., Inc.*, 79 So. 3d 855, 863 (Fla. 4th DCA 2012); *See also Fullman v. Graddick*, 739 F.2d 553, 557 (11th Cir. 1984).[4]

Count V fails to satisfy these pleading requirements. For example, Count V alleges an agreement "to engage in an unlawful scheme" but fails to identify when this agreement was reached, what its terms are, or whether the agreement was express or implied, and the only facts it offers, a shared office address, a shared email account, and a referral arrangement, describe a business relationship, not an agreement to accomplish an unlawful objective. Nor does mutual financial benefit (Compl. ¶ 128) supply the missing agreement, because parties to any lawful referral arrangement benefit from one another's business. Finally, Count V attributes the

[4] To state a claim for civil conspiracy, a plaintiff must allege (1) an agreement between two parties; (2) to do an unlawful act or to do a lawful act by unlawful means; (3) the doing of some overt act in furtherance of the conspiracy; and (4) damage to the plaintiff as a result of the acts performed pursuant to the conspiracy. *Eagletech*, 79 So. 3d at 863.

"dissemination of false and misleading advertisements" to SCRC, CALG, and Fonbuena alike (Compl. ¶ 127), yet the incorporated allegations identify SCRC as the source of every challenged advertisement (Compl. ¶¶ 7-8, 34, 42.)

**VIII. The Complaint is an impermissible shot gun pleading.**

The Eleventh Circuit has identified four categories of impermissible shotgun pleadings — including one that asserts "multiple claims against multiple defendants without specifying which of the defendants are responsible for which acts or omissions," and one "replete with conclusory, vague, and immaterial facts not obviously connected to any particular cause of action." *Weiland v. Palm Beach Cnty. Sheriff's Off.*, 792 F.3d 1313, 1321–1324 (11th Cir. 2015). This Complaint contains both. Counts III, IV, and V are each brought against "SCRC, CALG, and Fonbuena" collectively, and Count II against "CALG and Fonbuena," yet the operative allegations attribute conduct to "Defendants" as a bloc — that "Defendants have engaged in deceptive and unfair acts," that "Defendants have acted intentionally and in a manner designed to disrupt" EnFin's contracts, and that "Defendants have entered into an agreement" to carry out a scheme. A pleading "replete with allegations that 'the defendants' engaged in certain conduct, making no distinction among the . . . defendants charged," is a "quintessential shotgun pleading." *Magluta v. Samples*, 256 F.3d 1282, 1284 (11th Cir. 2001).

The incorporation of all general allegations into each count is also impermissible. Each count realleges and incorporates by reference the allegations in paragraphs 1-79, folding numbered paragraphs into each count "without any effort to connect or separate which of those . . . factual allegations relate to a particular count." *Barmapov v. Amuial*, 986 F.3d 1321, 1325 (11th Cir. 2021). As a result, the Complaint should be dismissed as a shotgun pleading.

## LEGAL STANDARD AND ARGUMENT FOR TRANSFER OF VENUE

In making a venue determination, the Court may consider extrinsic evidence, as the allegations of the Complaint are taken as true only if uncontroverted by Defendants' sworn statements. *See Home Ins. Co. v. Thomas Indus., Inc.*, 896 F.2d 1352, 1355 (11th Cir. 1990). Accordingly, the Declaration of CALG and the Declaration of SCRC are attached as **Exhibits A** and **B**, respectively.

### I. Venue is improper in the Middle District of Florida under 28 U.S.C. § 1406(a).

EnFin chose Florida through classic forum-shopping, relying on case law from the timeshare context that expands the Lanham Act beyond its text and congressional intent. *See supra* Part III.C. Venue here is improper, and the action should be transferred to the District of Nevada or Arizona under 28 U.S.C. § 1406(a), which directs that a case filed in the wrong district be dismissed or, in the interest of justice, transferred to any district or division in which it could have been brought.

Section 1391(b) permits suit only where a substantial part of the events or omissions giving rise to the claim occurred. That inquiry looks to the events that directly give rise to a claim and to the relevant activities of the defendant, not of the plaintiff. *Jenkins Brick Co. v. Bremer*, 321 F.3d 1366, 1371–72 (11th Cir. 2003). The alleged conduct underlying EnFin's claims, i.e. Defendants' advertising, consumer intake, referral relationship, shared operations, and legal correspondence, originated with SCRC in Arizona and CALG in Nevada, not Florida. (Exs. A-B, ¶¶ 3-9.) That some Florida consumers saw the advertising or retained Defendants shows only where consumers interacted with the conduct, not where the conduct occurred, and the fact that EnFin received demand letters addressed to Florida ignores where those demand letters originated. Because the Complaint alleges no substantial part of the operative events in this District, venue is improper under § 1391(b), and the Court should transfer the action to the District of Nevada or Arizona, where it could have been brought.

## II. Alternatively, the action should be transferred to Arizona or Nevada under 28 U.S.C. § 1404(a).

Alternatively, section 1404(a) authorizes transfer to any district where the action might have been brought when transfer serves the convenience of parties and witnesses and the interest of justice, assessed as of filing. *Van Dusen*, 376 U.S. at 622.

### A. The action could have been brought in Arizona or Nevada.

SCRC's advertising and the parties' referral arrangement originated in Arizona, (Ex. B, ¶¶ 5, 9), supporting personal jurisdiction there over both Defendants and establishing Arizona as a district where a substantial part of the events occurred. Nevada is equally proper: CALG is a Nevada law firm operating from Las Vegas, owned by a Nevada LLC with a Nevada resident managing principal. (Compl. ¶¶ 19-20, 22; Ex. A ¶ 3), Because the action could have been brought in either district, the Court must weigh convenience and justice through an individualized, case-by-case consideration. 28 U.S.C. § 1404(a); *Van Dusen v. Barrack*, 376 U.S. 612, 622 (1964).

**B. The § 1404(a) factors favor transfer.**

In deciding a § 1404(a) motion, courts weigh: (1) convenience of witnesses; (2) access to proof; (3) convenience of the parties; (4) locus of operative facts; (5) availability of compulsory process; (6) relative means; (7) plaintiff's choice of forum; (8) trial efficiency; and (9) the interests of justice. *Manuel v. Convergys Corp.*, 430 F.3d 1132, 1135 n.1 (11th Cir. 2005). A plaintiff's forum choice receives minimal deference when the plaintiff does not reside in the chosen forum and when the operative facts occurred elsewhere. *Suomen Colorize Oy v. DISH Network L.L.C.*, 801 F. Supp. 2d 1334, 1338 (M.D. Fla. 2011). Here, nearly every factor favors transfer.

The parties and conduct are centered outside Florida: EnFin is a Delaware corporation headquartered in Irvine, California (Compl. ¶ 18); SCRC operates from Arizona and CALG operates from Las Vegas. (Exs. A-B, ¶¶ 3-9) Florida's only tie is that a fraction of EnFin's borrowers allegedly reside here, viewed SCRC's advertising, and that some letters were sent to Florida. (Compl. ¶ 3, 24-25, 28, 49.)

**i. EnFin's choice of forum warrants minimal deference.** Deference to the plaintiff's chosen forum weakens when the forum is neither the plaintiff's home nor sufficiently connected to the controversy. *Suomen*, 801 F. Supp. 2d at 1338. EnFin is not a Florida citizen and has no principal place of business here (Compl. ¶ 18), and the dispute centers on Arizona and Nevada conduct, not Florida. Its choice warrants limited weight.

**ii. Witness convenience and compulsory process favor transfer.** Witness convenience and the availability of compulsory process to secure the attendance of non-party witnesses weighs in favor of transfer. *See id*; Fed. R. Civ. P. 45(c); *Manuel*, 430 F.3d at 1135 n.1. The witnesses with knowledge of Defendants' operations, advertising, intake, client communications, and legal correspondence are associated with SCRC's Arizona and CALG's Nevada operations. (Exs. A-B ¶¶ 3-10). EnFin identifies no Florida employee responsible for the challenged conduct; Florida's only potential witnesses are a limited number of consumers and two CALG attorneys, none of which are likely to testify about the creation of the advertising or

the coordination between Defendants, which is the focus of the Complaint. (Ex. A ¶¶ 7, 10).

**iii. The sources of proof are in Arizona and Nevada.** "The place where the defendant's documents are kept weighs in favor of transfer to that location." *Suomen*, 801 F. Supp. 2d at 1339. The advertising materials, consumer files, business records, and communications are maintained through SCRC's Arizona and CALG's Nevada operations (Ex. A ¶ 5, 8; Ex. B ¶ 7); EnFin's records are in California; and the Complaint identifies no meaningful evidence in Florida.

**iv. Florida is not the locus of operative facts.** The locus of operative facts is determined by the events directly giving rise to the claims. *Jenkins Brick*, 321 F.3d at 1371. The gravamen of the Complaint is that Defendants created and disseminated the challenged advertising, enrolled consumers, and sent demand letters to lenders. (Compl. ¶¶ 2, 34, 50, 57-58.) That alleged conduct originated principally from SCRC's Arizona office (Ex. B ¶ 3-10) and any injury to EnFin is centered in California, not Florida.

**v. Party convenience favors transfer.** Florida is not the home forum of any party, so absent transfer, every party is forced to litigate where none is located. Arizona and Nevada, by contrast, are home to Defendants. (Exs. A-B, ¶¶ 3-10). EnFin, a leading servicer of solar financing with thousands of customers across the country (Compl, ¶ 1), must travel regardless and can litigate anywhere. Transfer

places the case in a forum substantially closer to the parties and alleged conduct rather than merely shifting inconvenience. *See Van Dusen*, 376 U.S. at 616.

**vi. The interests of justice favor transfer.** Section 1404(a) promotes efficient adjudication in the most convenient forum. *Van Dusen*, 376 U.S. at 616. Arizona has a substantial interest in claims concerning conduct operating from that state, Florida's connection is minor, and EnFin's interests with a headquarters in California are untethered to this District. (Exs. A-B ¶¶ 3-10). Transfer to the District of Arizona, or alternatively the District of Nevada, best serves the interests of justice.

For these reasons, the Court should transfer this action under 28 U.S.C. § 1406(a) or § 1404(a).

## CONCLUSION

For the foregoing reasons, Defendants respectfully request that the Court dismiss the Complaint in its entirety. To the extent the Complaint is not dismissed, the Court should transfer this action to the United States District Court for the District of Arizona or the District of Nevada pursuant to 28 U.S.C. §§ 1406(a) or 1404(a).

WHEREFORE, Defendants respectfully request that the Court dismiss the Complaint with prejudice, or alternatively, transfer venue, award Defendants their attorneys' fees and costs, and grant any other and further relief.

## LOCAL RULE 3.01(G) CERTIFICATE

I HEREBY CERTIFY that on October 19, 2026, undersigned conferred in good faith with counsel for Plaintiff on the relief requested herein by Teams, but the issues could not be resolved.

*/s/ Lauren M. Reynolds*
C. Andrew Roy, Esquire
Florida Bar No.: 91629
aroy@whww.com
Lauren M. Reynolds, Esquire
Florida Bar No.: 112141
Lreynolds@whww.com
WINDERWEEDLE, HAINES, WARD
& WOODMAN, P.A.
329 N. Park Avenue, Second Floor
Winter Park, FL 32789
Post Office Box 880 (mailing address)
Winter Park, FL 32790-0880
(407) 423-4246
(407) 645-3728 (facsimile)
*Counsel for Defendants*

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on October 22, 2026, the foregoing was electronically filed with the Clerk of the Court by using the CM/ECF filing system, which will serve a copy of same to all counsel of record.

*/s/ Lauren M. Reynolds*
Lauren M. Reynolds, Esquire

# EXHIBIT A

UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

ENFIN Corp., a Delaware Corporation,

Plaintiff,

v.

SOLAR CANCELLATION RESOURCE CENTER LLC, a Wyoming limited liability company; FONBUENA LAW FIRM, CHTD., d/b/a CONSUMER ADVOCACY LAW GROUP, a Nevada law firm, and RICHARD FONBUENA, an individual,

Defendants.
_______________________________________/

Case No. 6:26-cv-01885-PGB-DCI

**DECLARATION OF CALG IN SUPPORT OF DEFENDANTS' MOTION TO TRANSFER VENUE**

1. I am over 18 years of age, of sound mind and otherwise competent to make this Declaration. The facts set out in this Declaration are based on my personal knowledge.

2. My name is Richard Fonbuena, and I am the owner and managing attorney of Defendant Consumer Advocacy Law Group ("CALG"). I submit this Declaration in support of Defendants' Motion to Transfer Venue.

3. CALG is a law firm based in Las Vegas, Nevada, with its office at 350 South Rampart Blvd, Suite 346, Las Vegas, Nevada 89145. CALG is the d/b/a of Fonbuena Law Firm, Chtd., and I am the owner of CALG.

4. CALG conducts its law practice from its Las Vegas, Nevada office, and has attorney employees in states other than Nevada. For example, CALG employs two Florida attorneys. Attorneys access client files and correspond with clients through cloud-based systems, including MyCase.

5. CALG maintains no office in Florida. CALG does not maintain any business records or office space in Florida.

6. After attorney review, the demand and cease-and-desist letters to lenders that are referenced in this action were sent by CALG personnel working from CALG's Las Vegas, Nevada office.

7. CALG has now filed approximately 300 arbitration claims against solar loan financing companies, and has approximately 50 arbitration claims that it is preparing to file against EnFin in particular.

8. The CALG personnel with knowledge of the facts relevant to this action — including the preparation and transmission of demand letters, intake procedures, and CALG's business operations — primarily reside and work in Nevada. With the exception of the two Florida attorney employees, none of these individuals reside or regularly work in Florida.

9. CALG's records that may be relevant to this litigation are maintained from CALG's Las Vegas office and are not maintained in Florida.

10. To the extent CALG communicates or coordinates with SCRC regarding referred matters, those communications are handled through CALG's personnel working from its Nevada office.

11. Requiring CALG and its witnesses to litigate this action in Florida would impose substantial burden and expense. Litigating in Florida would require CALG's attorneys and employees with relevant knowledge to travel across the country for hearings, depositions, and trial, disrupting CALG's law practice and increasing litigation costs. By contrast, litigating in the Nevada, or even Arizona, would substantially reduce those burdens because CALG, its witnesses, and its records are located in Nevada.

I declare under penalty of perjury that the foregoing is true and correct.

FONBUENA LAW FIRM, CHTD.,
d/b/a CONSUMER ADVOCACY LAW GROUP
Richard Fonbuena as Managing Attorney
Executed on October 22, 2026

# EXHIBIT B

UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

ENFIN Corp., a Delaware Corporation,

Plaintiff,

v.

SOLAR CANCELLATION RESOURCE CENTER LLC, a Wyoming limited liability company; FONBUENA LAW FIRM, CHTD., d/b/a CONSUMER ADVOCACY LAW GROUP, a Nevada law firm, and RICHARD FONBUENA, an individual,

Defendants.
_______________________________________/

Case No. 6:26-cv-01885-PGB-DCI

**DECLARATION OF SCRC IN SUPPORT OF DEFENDANTS' MOTION TO TRANSFER VENUE**

1. I am over 18 years of age, of sound mind and otherwise competent to make this Declaration. The evidence set out in the foregoing Declaration is based on my personal knowledge.

2. My name is Gabriela Vidal Corrales, and I am President of Defendant Solar Cancellation Resource Center LLC ("SCRC"), and I submit this Declaration in support of Defendants' Motion to Transfer Venue.

3. SCRC is a limited liability company organized under the laws of the State of Wyoming. Its principal business address is 9160 E. Bahia Drive, Suite 100, Scottsdale, Arizona.

4. SCRC conducts its business operations from its office in Arizona. SCRC maintains no office, employees, or business operations in Florida. SCRC's management, marketing, customer intake, and consumer communications are conducted by personnel working from its Arizona office.

5. The advertising and marketing that are the subject of this action are created, reviewed, approved, and disseminated by SCRC personnel working from SCRC's Arizona office. SCRC's customer intake procedures and communications with prospective and existing consumers are likewise conducted by personnel working from that office.

6. The SCRC personnel with knowledge of the facts relevant to this action—including SCRC's advertising, marketing, customer intake procedures, and general business operations—reside and work in Arizona. They include Marc Wasser, Business Development Director, and Viri Hernandez, VP of Marketing and Operations. None of these individuals reside or regularly work in Florida.

7. SCRC's records relevant to this litigation might include advertising and marketing materials, customer intake records, and business records. Those records are maintained from SCRC's Arizona office and are not maintained in Florida.

8. SCRC personnel responsible for creating and disseminating the advertising challenged in this action, maintaining customer records, and communicating with consumers regularly work from Arizona and would be expected to testify regarding the allegations in the Complaint.

9. To the extent SCRC communicates or coordinates with CALG regarding referred matters, those communications are handled through SCRC personnel working from its Arizona office.

10. Requiring SCRC and its witnesses to litigate this action in Florida would impose substantial burden and expense, including requiring SCRC personnel to travel across the country for hearings, depositions, and trial, disrupting SCRC's ordinary business operations, and increasing litigation costs. Litigating this action in Arizona, or even Nevada, would substantially reduce those burdens because SCRC's personnel, operations, and records are located in Arizona.

I declare under penalty of perjury that the foregoing is true and correct.

SOLAR CANCELLATION
RESOURCE CENTER LLC
By Gabriela Vidal Corrales, its President
Executed on October __, 2026